## NOFSINGER *v.* REYNOLDS ET AL.

PRACTICE.—*Action to Compel Foreclosure of Mortgage.—Jurisdiction.—Interpleader.—Process.*—A., the owner in fee simple of certain real estate, on which there were two mortgages, one executed by A. to B., a former owner, and a prior one executed by B. to C., who was B.'s vendor, brought an action in the county wherein said real estate was situated, against B. and C., to compel the defendants to interplead and litigate matters in dispute between them in regard to said prior mortgage, and to cause satisfaction of said mortgages to be entered.

*Held*, that the court was not deprived of jurisdiction of C. because he resided in another county.

*Held*, also, that the complaint in such action was not bad on demurrer because there was no affidavit attached thereto denying collusion of the plaintiff with either of the defendants.

*Held*, also, that the defendants having been brought into court to interplead, no further process was necessary against C. upon the filing of a cross complaint by B.

BILL OF EXCEPTIONS.—*Time of Filing.*—Preceding a bill of exceptions in the transcript of the record on appeal was the following: "Nofsinger's bill of Ex., No. 7, filed Nov. 13th, 1871."

*Held*, said date being within the time allowed for the filing, that it was sufficiently shown that the bill was filed, and that it was filed in time.

MOTION FOR NEW TRIAL.—*Instructions to Jury.*—*Bill of Exceptions.*—A cause assigned in a motion for a new trial was, "error in refusing to give to the jury instructions numbered one to eleven inclusive, asked by the defendant, as shown by his bill of exceptions." The bill of exceptions was not yet filed.

*Held*, that the cause assigned was sufficiently definite, without the aid of the bill of exceptions.

EXCEPTIONS.—*Instructions to Jury.*—In a bill of exceptions, following certain instructions to the jury given by the court were certain instructions signed by counsel, immediately preceded by a statement that they were asked by the defendant and refused by the court, after which instructions refused was the following: "To the giving of each of which instructions and the refusal to give those asked, defendant at the time objected and excepted."

*Held*, that the exception was not too general or indefinite, but was properly taken.

From the Montgomery Circuit Court.

*B. Harrison, C. C. Hines* and *W. H. H. Miller*, for appellant.

*J. P. Baird, C. Cruft, J. E. McDonald* and *D. W. Voorhees*, for appellees.

DOWNEY, J.—This action was commenced in the Vigo Circuit Court and by change of venue taken to the Montgomery Circuit Court. It was brought by David C. Stunkard against the appellant, Nofsinger, and Harris Reynolds.

The complaint alleges, in substance, that the plaintiff is the owner in fee simple of the property known as the Buntin House, being lot 99 and part of lot 58 in Terre Haute; that in November, 1865, said property was owned by Nofsinger,

who then sold and conveyed the same to Reynolds, who paid him part of the price and executed to him his notes and a mortgage on the property for ten thousand dollars, the balance of the purchase-money; a copy of the mortgage is filed and made a part of the complaint; that in April, 1866, Reynolds sold and conveyed the undivided half of the premises to one Robbins, the said Reynolds agreeing to discharge said mortgage; that afterwards said Robbins conveyed to one Adamson, and Adamson to the plaintiff, the said mortgage still being of record against said property; that in the year 1866, said Reynolds sold and conveyed to one Wingate the other undivided half of said property; that Wingate gave his note to Reynolds as a part of the purchase-money for one-half of the amount of said mortgage and interest, and Reynolds agreed to discharge said mortgage to Nofsinger and have the same satisfied on the records.

It is further alleged that in December, 1868, Wingate sold and conveyed said property to the plaintiff, and it was agreed that the plaintiff should execute to Reynolds his note for five thousand five hundred and eighty-four dollars and fifty cents, with interest, secured by a mortgage on said property, and Reynolds released all claims on Wingate and gave to plaintiff his obligation, to the effect that he would have said mortgage satisfied on the record. A copy of this note, mortgage and agreement is also filed and made part of the complaint. It is averred that Reynolds was to have said mortgage satisfied in a reasonable time, and that he has failed, and now refuses so to do; that the plaintiff desired to pay the amount of his note to Nofsinger on his mortgage, but Reynolds refused to allow him to do so; that Reynolds insists that his mortgage to Nofsinger is without consideration, that the consideration has failed, and that he has a counter-claim against the same which will exceed the amount of the said mortgage, with which he proposes to satisfy the same; that plaintiff is unable to sell said property, owing to the title being clouded by said incumbrance; that

neither Nofsinger nor Reynolds will bring any suit, or in any way adjust the matters between them.

It is further stated that there is a large brick hotel on said lots, which requires a large sum to be expended on it in improvements, and it is not safe to make such improvements until these incumbrances are removed.

The plaintiff offers to bring into court the amount apparently due on said notes and mortgage from Reynolds to Nofsinger, to wit, fourteen thousand three hundred and seventy-five dollars, and asks that Reynolds and Nofsinger be required to interplead and litigate the question as to whether said mortgage from Reynolds to Nofsinger is a valid lien on said real estate for the full amount or any part thereof, and that the court on the hearing will determine how much, if anything, is due on said notes and mortgage from Reynolds to Nofsinger, and will apply the money so brought into court to the payment and satisfaction of such amount as is found to be due to said Nofsinger, for that purpose decreeing the amount due from plaintiff to Reynolds to the payment thereof, and then decree that the money so applied shall also operate as a satisfaction of the debt and mortgage from plaintiff to Reynolds, and if a sum greater than what is due from plaintiff to Reynolds is found to be due from Reynolds to Nofsinger, plaintiff asks for a judgment personally against said Reynolds for such excess, with interest from this date; that both of said mortgages be satisfied, and that Reynolds and Nofsinger be required to enter satisfaction of their respective mortgages on the proper records, and that Reynolds surrender his note against the plaintiff; that the court will quiet the plaintiff's title to said real estate by removing said clouds, and grant such other and proper relief as may be just and equitable.

Nofsinger, while the case was yet pending in Vigo county, filed an answer, alleging that the court had no jurisdiction over his person, because at the commencement of the action, etc., the said defendant was a resident of Marion, and not of Vigo county, and that his co-defendant, Reynolds, was a res-

ident of the county of Montgomery, and not of the county of Vigo.

This answer was held bad on demurrer thereto. Nofsinger answered the complaint, setting up his notes and mortgage against Reynolds, etc. A demurrer of Stunkard to the second paragraph of the answer in bar of the appellant was sustained.

Reynolds filed a cross complaint against Stunkard and Nofsinger, alleging in different paragraphs payment of his notes and mortgage to Nofsinger, failure of consideration, etc.

Nofsinger answered the cross complaint, again urging the want of jurisdiction of his person, but this answer was also held bad. He also answered in bar of the cross complaint.

Nofsinger also filed a cross complaint against Stunkard and Reynolds, to which there was an answer. The issues were tried by a jury, and there was a general verdict for Nofsinger for six hundred and forty-seven dollars and thirty-five cents, and also answers to certain interrogatories. A motion for a new trial was made by Nofsinger and overruled, and there was final judgment.

Thirteen errors are alleged, but only part of them are urged. It is urged, in the first place, that the court had no jurisdiction of the person of the appellant; that the action was not properly brought in Vigo county; and that the court therefore erred in sustaining the demurrer to the answer of Nofsinger to the jurisdiction.

Secondly. It is insisted that the court improperly sustained the demurrer of Reynolds to the answer in abatement of the appellant to the cross complaint of Reynolds.

Thirdly. That the court, on the demurrer of Stunkard to the second paragraph of the answer in bar of the appellant to the complaint of Stunkard, should have held the complaint insufficient.

Fourthly. That process should have been issued on the cross complaint of Reynolds against Nofsinger, which was not done, but he was compelled to answer without process.

And lastly, that the court, in several particulars, misdirected the jury in the instructions.

On the first question, that is, as to the jurisdiction of the Vigo Circuit Court, we have with some hesitation arrived at the conclusion that no error was committed. The ground on which our ruling is put is this: the object of the action was to compel the appellant to institute an action to foreclose his mortgage on the real estate, which was situated in Vigo county. If the court should sustain the complaint, it would have been proper for the court to have adjudged and ordered that Nofsinger should file a complaint to foreclose his mortgage, to which he would have made Reynolds and Stunkard defendants. Reynolds might then have pleaded his defences to the complaint, and thus the controversy might have been settled, and the proper judgment rendered. This course was not pursued, however, but two cross complaints and much pleading in addition are found in the record. If this view of this point in the case is not correct, it must be because the action by Stunkard to compel an interpleader might have been commenced in Marion county, where Nofsinger resided, or in Montgomery county, where Reynolds resided; and then, when an interpleader was ordered, Nofsinger must have gone to Vigo county to institute his action to foreclose his mortgage; for there can be no doubt but that the suit to foreclose the mortgage must be brought in that county. 2 G. & H. 56, sec. 28. Of the correctness of this latter mode of proceeding we have no more doubt than we have of the correctness of the manner resorted to in this case. We will not say that either course might not be adopted. But that the latter mode may be used we need not in this case decide. It is said in Willard's Equity, p. 321:

" If the plaintiff's right to file the bill be contested by either of the defendants, the issues must be tried as in other cases."

Again, on p. 322, he says:

" If, at the hearing, the question between the defendants

is ripe for a decision, the court decides it; and if it is not ripe for decision, directs an action, or an issue, or a reference to a master, as may best suit the nature of the case."

The provisions of our civil code are broad enough to warrant such judgment as may be necessary. 2 G. & H. 218, sec. 368.

The second error urged involves no other question than that already decided.

Next, it is claimed that the complaint was bad. There was no demurrer to the complaint, and it is not assigned as error that it does not state facts sufficient to constitute a cause of action. There appears to have been a demurrer filed and sustained to the second paragraph of the answer in bar of the appellant to the complaint of Stunkard; but the demurrer is not in the record. We doubt exceedingly whether this point is in the record. It was required, according to the pleading and practice in suits in chancery, that to a bill for interpleader proper there should be an affidavit annexed denying all collusion with either of the parties; and if this was not done, the bill was demurrable for that reason. Willard Eq. 316; Daniell Ch. Pl. & Pr. 1552.

We do not find that it was necessary in chancery to deny in the bill the existence of collusion, and as a demurrer under the code can be sustained for specified causes only, and as the want of verification of a pleading is not one of them, we conclude that the objection of want of affidavit in such case is not cause of demurrer. *Turner* v. *Cook*, 36 Ind. 129.

It may be that in a case like this no affidavit is required. See Daniell Ch. Pl. & Pr. 1563, and *Vyvyan* v. *Vyvyan*, 30 Beav. 65; S. C., 7 Jur. N. S. 891.

We do not think the fourth objection can be allowed. As the parties were called into court to interplead, it seems to us that no further process was necessary when the matters in dispute were to be settled in the same action. *Pattison* v. *Vaughan*, 40 Ind. 253.

Before leaving the subject of the pleadings in such a case, we may remark that it seems to us quite clear that the case,

as made by the complaint, is not properly one of strict interpleader. Various definitions are given of the remedy, all substantially the same. Perhaps the following is correct: It is a complaint filed for the protection of a person, from whom several persons claim, legally or equitably, the same thing, debt or duty; but who has incurred no independent liability to any of them, and does not himself claim an interest in the matter.

The complaint should allege: 1st. That two or more persons have preferred a claim against the complainant. 2d. That they claim the same thing, debt or duty. 3d. That the complainant has no beneficial interest in the thing claimed. 4th. That he cannot determine, without hazard to himself, to which of the defendants the thing of right belongs. Willard Eq. 314; Story Eq., sec. 801; Daniell Ch. Pl. & Pr. 1560; *Crane* v. *Burntrager*, 1 Ind. 165.

There are, however, bills in the nature of bills of interpleader, as well as bills of interpleader, properly so called; but wherein they differ and what are the requisites of such bills in the nature of bills of interpleader do not clearly appear.

Story says: "But although a bill of interpleader, strictly so called, lies only where the party applying claims no interest in the subject-matter; yet, there are many cases where a bill, in the nature of a bill of interpleader, will lie by a party in interest, to ascertain and establish his own rights, where there are other conflicting rights between third persons;" and he mentions the following, among other instances: "So, if a mortgagor wishes to redeem the mortgaged estate, and there are conflicting claims between third persons as to their title to the mortgage money, he may bring them before the court, to ascertain their rights, and to have a decree for a redemption, and to make a secure payment to the party entitled to the money." Story Eq., sec. 824. And see *Goodrick* v. *Shotbolt*, Pre. Ch. 333, and *Bedell* v. *Hoffman*, 2 Paige, 199.

It may be remarked, in this connection, that the provision in our civil code on the subject of interpleader, 2 G. & H. 54, sec. 23, has relation to cases where an action is pending, and does not prevent a resort to an action to compel an interpleader. See Willard's Eq. 315.

We are next to examine the instructions.

It is urged by counsel for appellees, that the question as to the instructions depends upon whether the bill of exceptions is properly in the record or not, and they deny that it is properly in the record. Sixty days from September 22d, 1871, were given in which to file the bill, and this statement precedes the bill of exceptions in the record: "Nofsinger's bill of Ex. No. 7, filed November 13th, 1871." We are of the opinion that this sufficiently shows that the bill of exceptions was filed, and that it was filed in time.

It is further insisted that the reason for a new trial relating to the instructions was too indefinite. It was as follows:

"Error in refusing to give to the jury instructions numbered one to eleven inclusive, asked by the defendant, as shown by his bill of exceptions."

It is urged that the reference to the bill of exceptions, which was not then filed, renders the reason for a new trial too uncertain. If the instructions were not identified by their numbers, we should think this position well taken; but we think the ground for a new trial was sufficiently definite without any aid from the bill of exceptions.

Again, it is urged that the exception taken was too general and indefinite. It was as follows:

"To the giving of each of which instructions and the refusal to give those asked, defendant Nofsinger at the time objected and excepted."

This exception follows immediately after the instructions asked by the defendant, and immediately preceding them and following the court's instructions is this statement:

"And the court refused to give the jury the following instructions asked by defendant Nofsinger, to wit:" The

instructions are in the bill of exceptions, and are signed by counsel.   We think the exception was properly taken.

Again, it is insisted by counsel for appellees that, although fraud in one form is charged in the cross complaint of Reynolds against Nofsinger, yet the evidence did not present that as a material matter on the trial of the cause, and that therefore the instructions were properly refused.   We find that most of the propositions contained in the eleven instructions refused were fully given in the general charge of the court.   To this extent the charges asked were properly refused.

The following propositions, being part of the sixth and all of the seventh instruction asked, were refused:

" A mere expression of opinion by Nofsinger as to the value of the property sold would not constitute fraud.   If Reynolds was as competent as Nofsinger to judge of the value of the personal property, or call to his aid those who were, and before the sale saw the personal property or so much of it as to enable him to form a reasonably correct judgment of the value, he could not afterwards rely upon any expression of opinion of Nofsinger as to such value, nor would such representation or expressions of opinion constitute fraud."

In a case to which they were applicable, no doubt these instructions would be proper, for it is the law, as held by this court, that misrepresentations by one contracting party to the other, as to the value or quality of a commodity in market, when correct information on the subject is equally within the power of both parties with equal diligence, do not constitute fraud.   But we do not think there was anything in this case, as it was presented to the jury, which rendered it material to give these instructions.   The case presented itself as one of contract, rather than as one of tort.   The parties had entered into a contract, by which Nofsinger had agreed to give possession of the hotel and the furniture, etc., therein, which he had represented to amount to ten thousand dollars or more, at a certain time, and the evidence

tended to show that he failed to do this, and that Reynolds really only got personal property to the amount of six hundred and fifty-six dollars and twenty cents. Nofsinger sought to get the written contract reformed, but failed in this, and it seems to us that the case went to the jury and was decided by them on the contract, and not on the ground of any representations of Nofsinger as to the value of the property. It is true that Reynolds, in the fourth paragraph of his cross complaint, charged that Nofsinger had represented that there was a certain amount of property in the hotel; but this seems to us only to have been alleged for the purpose of charging that Nofsinger failed to deliver to him the property which he represented there was in the hotel, and not for the purpose of charging that the representations were untrue and fraudulent.

The fifth instruction asked by Nofsinger was:

"If the jury believe from the evidence the written contract in duplicate was deliberately prepared by said Reynolds, and written by him, and was afterwards presented to said Nofsinger for his signature, who only casually or hastily examined the same before signing, then stronger proof of mutual mistake would be required of said Reynolds, to support his application to reform the agreement, than would be required of said Nofsinger to support his."

This instruction was refused, and the jury were told that "the question whether more or less evidence is required of one or the other of the parties in this regard, is purely a matter for you" (the jury) "to determine, from your view of all the circumstances and facts proven."

Reynolds, as well as Nofsinger, alleged that there was a mistake in the written contract, each averring a mistake in a particular different from that alleged by the other. We do not think that there was any error in the action of the court in this ruling. The question whether the contract should be reformed or not did not depend upon which party produced the stronger proof. If there was proof of the mistake alleged by either party, the contract might have been cor-

rected in that particular, whether such proof was stronger than that produced by the other party to show the mistake alleged by him or not, or whether such other party produced any evidence of the mistake alleged by him. There was nothing practical in the proposed instruction. We have examined the instructions given by the court, and we think the appellant has no substantial ground on which to complain of them.

The judgment is affirmed, with costs.

Petition for a rehearing overruled.