Ketcham *et al. v.* The Brazil Block Coal Company.

No. 9904.

KETCHAM ET AL. *v.* THE BRAZIL BLOCK COAL COMPANY.

INTERPLEADER —*Practice.*—In a suit for interpleader there is no available error in requiring issues to be made between the defendants to the complaint before the entry of a decree requiring them to interplead, but this is not the general practice.

SAME.—*Complaint.*—A complaint for interpleader which shows that two or more persons, made defendants, have made claim against the plaintiff for the same thing, that the plaintiff has no beneficial interest in the dispute, and that he can not, without hazard, decide to which of the defendants the thing belongs, is good on demurrer. Nor is it vitiated by bringing into court a less sum of money (in dispute) than is due, if it contain an offer to pay whatever may be ascertained to be due.

SAME.—*Landlord and Tenant.*—A tenant may bring interpleader against his landlord, if the landlord's title be not brought in question thereby, as where a stranger claims the rent by assignment from landlord, or as purchaser from him, of the estate.

SAME.—*Parties.*—One who makes no claim and has no interest is not a proper defendant to a complaint for interpleader.

PRACTICE.—*Striking Out.*—It is proper to strike from an answer containing a general denial matter which may be proven under the denial; so, also, immaterial averments.

SAME.—*Harmless Error.*—It is not available error to sustain a demurrer to a paragraph of answer, all the averments of which may be proved under the general denial, which is in.

TRIAL.—*Jury.*—*Practice.*—The refusal of a trial by jury can only be questioned in the Supreme Court as a reason for a new trial.

SAME.—*Interpleader.*—*Equity.*—*Practice.*— *Verdict.*—*New Trial.*--Interpleader is a case of exclusive equitable jurisdiction not triable by jury, in view of section 409, R. S. 1881. In such case the court may take the verdict of a jury, upon such questions of fact as it shall determine, merely for its information, and the jury can not find a general verdict. Nor is the court concluded by the findings of the jury, but the decree must be made as the result of its own judgment upon the evidence, aided merely by the jury. Instructions to the jury, given or refused, or the admission or rejection of evidence, can not, therefore, be cause for a new trial, nor can the refusal of the court to require the jury to make more specific answers.

CONTRACT.—*Mining Lease.*—*Construction.*—*Evidence.*—*Notice.*—A. purchased land subject to a mining lease which had been erroneously recorded, and of the true terms of which he claimed that he had no notice.

*Held,* that conversations held with his agent during his negotiations for the purchase, and also the acts of both parties afterwards, were admis-

sible to show notice, as also to aid in the construction of the lease as recorded, where its terms were ambiguous.

From the Putnam Circuit Court.

*S. Claypool, W. A. Ketcham, G. A. Knight, C. H. Knight, B. Harrison, C. C. Hines* and *W. H. H. Miller,* for appellants.

*T. A. Hendricks, A. W. Hendricks, C. Baker, O. B. Hord, A. Baker* and *E. Daniels,* for appellee.

BICKNELL, C. C.—The appellee commenced this suit in the Clay Circuit Court; it was taken thence by change of venue to the Putnam Circuit Court. The complaint averred, in substance, that the plaintiff, as the holder of certain mining property, was bound to pay and was ready to pay certain royalties; that the defendant John L. Ketcham, as the holder of the estate of the original lessor of said property, was claiming that all of said royalties were due and payable to him, without any deduction except $100, and that the defendant, The Ohio and Indiana Coal Company, was claiming that all of said royalties were payable to it, to be applied in repayment of certain advance payments made by it and by prior lessees, in pursuance of the terms of the original lease to the original lessor and to his assignees.

The complaint averred that each of said defendants had demanded said royalties and had threatened to declare a forfeiture of the plaintiff's interest in said property unless said royalties were promptly paid, said Ketcham being the owner of the reversion, and said Indiana Coal Company having acquired the interest of the original lessee, which afterwards, by assignment or sub-lease, became vested in the plaintiff.

The complaint also averred that the plaintiff was ignorant as to which of said defendants had the right to said royalties. The plaintiff paid into court $1,943 as the amount of said royalties, for the benefit of the defendant who should be found really entitled thereto, and the complaint demanded that the defendants should be required to interplead, and that the court would determine whether said royalties were to be paid to said

Ketcham without deduction except $100, or whether the advance payments aforesaid should be repaid to The Indiana and Ohio Coal Company out of said royalties, and that until the determination of such question the defendants should be perpetually enjoined, etc.

To this bill of interpleader the defendant Ketcham filed a demurrer, which was overruled. The causes of demurrer were that the complaint did not state facts sufficient, etc., and that there was a defect of parties, because one William W. Risher was not a party.

The defendants having been required to interplead, and upon their interpleading the court having rendered a judgment in favor of The Ohio and Indiana Coal Company; the defendant Ketcham appealed therefrom, and his first two specifications in his assignment of errors present the question as to the sufficiency of the complaint.

It was not necessary that Risher should be a party; he had been the owner of the mining interest now held by the plaintiff, and had transferred the same to the plaintiff, the plaintiff agreeing to pay all the royalties he was bound to pay. In the question presented by the bill of interpleader he had no interest whatever; it could make no difference to him whether the moneys paid into court were paid unconditionally to Ketcham or conditionally to The Ohio and Indiana Coal Company.

A bill of interpleader must allege: 1st. That two or more persons have preferred a claim against the complainant. 2d. That they claim the same thing, debt or duty. 3d. That the complainant has no beneficial interest in the thing claimed. 4th. That he can not determine, without hazard to himself, to which of the defendants the thing of right belongs. *Nofsinger* v. *Reynolds,* 52 Ind. 218.

All of these matters are distinctly averred in the complaint under consideration, but it is urged against the complaint that " it seeks by its averments to make an issue of fact with one of the alleged claimants, in the exclusive interest of the other, upon the question of the proper construction of the lease."

The bill of interpleader being a creature of equity, apparent collusion between the plaintiff and any of the defendants would necessarily be fatal thereto, but the complaint here shows nothing of that sort; it merely states the claims of both the defendants to the royalties, and it was right to do this to show the necessity for an interpleader.

It is further objected to the complaint that it shows that the money paid into court was $400 less than enough; but the plaintiff paid in what it had on hand, the controversy was about that, and, even if enough were not paid in, the complaint would not be made bad by a mere mistake in the amount, where there is an offer, as there was in this case, to pay all that may be ascertained to be due.

The last objections made to the complaint are that the plaintiff is only an under-tenant of the defendant, The Ohio and Indiana Coal Company, and that an under-tenant can not maintain a bill of interpleader against his landlord, and that there is no privity of contract or tenure between the plaintiff and Ketcham, so that it appears by the complaint that Ketcham has no claim whatever to the royalties, and could maintain no action therefor against the plaintiff.

It is true as a general rule that a bill of interpleader will not lie in behalf of a tenant against his landlord. *Whitewater Valley, etc., Co.* v. *Comegys,* 2 Ind. 469; *Crane* v. *Burntrager,* 1 Ind. 165. A tenant can not dispute the title of his landlord; but there may be cases in which a tenant, demanding an interpleader, does not dispute his landlord's title, but affirms it and puts himself on the mere uncertainty of the person to whom the rent is to be paid; but if a claim to the rent be set up by a mere stranger, without privity of contract or tenure, there the tenant can not compel his landlord to interplead with the stranger. 2 Story's Eq. Jur., sec. 812. The case at bar comes within the exceptions. The royalties are due under an agreement. If one construction of that agreement be correct they are due to Ketcham; under another construction, The Ohio and Indiana Coal Company would be entitled to

them in repayment of certain advance payments, and the plaintiff, without disputing anybody's title as landlord, is seeking by its complaint to ascertain to whom, under the agreement, the royalties are to be paid. All the parties to the suit are bound by and are claiming under the same original contract out of which the royalties arise. In such a case it is not necessary to consider the apparent conflict in the cases as to what constitutes the precise difference between a sub-lease and an assignment, nor how far the old legal rules are modified by sections 9 and 10 of the act of May 20th, 1852 (2 R. S. 1876, p. 341), which give to sub-lessees the same remedy on the original covenant against the chief landlord as they might have had against their immediate lessor, and which give to alienees of lessors and lessees of lands the same legal remedies in relation to such lands as their principals. It is enough to say that if the allegations of the complaint be true (and under the demurrer they must be assumed to be true), the complaint contains all the particulars held to be necessary in *Nofsinger v. Reynolds, supra,* and there was no error in overruling the demurrer to it.

The Ohio and Indiana Coal Company filed an answer to the complaint, and also a cross complaint against Ketcham and the plaintiff. These pleadings the defendant Ketcham was ordered to answer. He moved to vacate the order requiring him to answer said cross complaint, and he moved also to reject said cross complaint. Both of these motions were overruled.

The fourth specification of the assignment of errors presents as errors the overruling of these motions, the third specification being expressly waived. The reasons assigned for these motions were the following:

1st. Because there has been no final judgment or decree requiring the defendants to interplead.

2d. Because said rule was prematurely and improperly entered before the determination of the matters involved in the plaintiff's complaint or bill of interpleader.

3d. Because said defendants herein can not be required to interplead until there has been a determination and adjudication of plaintiff's right to maintain a bill of interpleader against the defendants.

4th. Because said cross complaint was filed before any decree was entered requiring the defendants to interplead.

The point here presented is, is it necessary always to determine the question whether the plaintiff is entitled to a decree of interpleader before receiving or requiring any pleadings between the defendants?

It is said that if the defendants do not deny the statements of the bill the ordinary decree is that the defendants do interplead, and the plaintiff then withdraws from the suit; but the defendants or either of them may contest and deny the allegations in the bill, or may set up distinct and independent facts in bar of the suit; and in such a case the plaintiff must reply to the answer and close the proofs in the usual manner, before he can bring the cause to a hearing between himself and the defendants; and at the hearing only can he insist upon a decree that the defendants interplead. Story's Eq. Plead., sec. 297 *a.*

Although this would appear to be the appropriate and regular mode of proceeding, it does not seem to be indispensable. In *City Bank* v. *Bangs,* 2 Paige, 570, Chancellor WALWORTH said: "As to the mode of proceeding after it is ascertained that a bill of interpleader is properly filed, there does not appear to be any settled practice. * * * * It also appears from the English reports that the testimony is sometimes taken, as to the rights of the defendants between themselves, previous to a decree to interplead. * * In those cases * * * the court settles the rights of the parties at once, and makes a final decree as to those rights, and as to the disposition of the fund in controversy."

This subject came up under our practice in the case of *Nofsinger* v. *Reynolds,* 52 Ind. 218, 223, where, as in the present case, one of the defendants to a bill of interpleader had filed a

cross complaint and the whole matter had been determined in the original suit. This court held that such proceeding was not error, citing the provisions of the Code of 1852, section 368, and Willard Eq., p. 322, as follows: "If, at the hearing, the question between the defendants is ripe for a decision, the court decides it; and if it is not ripe for decision, directs an action, or an issue, or a reference to a master, as may best suit the nature of the case."

In the case at bar, after the sufficiency of the complaint had been established by the decision overruling the demurrer to it, one of the defendants answered the complaint, admitting its material allegations, and filed a cross complaint against the appellant, the other defendant. We think there was no substantial error in requiring the appellant Ketcham to answer this cross complaint, nor in overruling his motions to set aside the order to answer and to reject the cross complaint.

The appellant Ketcham filed his separate answer to the complaint in three paragraphs. The court sustained a motion by the appellee to strike out parts of the first paragraph of said answer, and the fifth specification of the assignment of errors calls in question this ruling of the court. There was no error in this action of the court. The appellant Ketcham says in his brief that "the striking out of these parts of the answer left the remaining part a general denial."

The parts stricken out embraced matter competent to be given in evidence under the general denial and also matter which was immaterial and irrelevant; the parts stricken out denied that the lease set out in the complaint was a true copy of the lease as executed, and also denied that it was a true copy of the record of said lease.

The appellee filed demurrers to the second and third paragraphs of the appellant's answer to the complaint, and error in this ruling constitutes the sixth specification in the assignment of errors. These second and third paragraphs deny that there is any privity of contract or estate between the appellant Ketcham and the appellee. These answers present the

same matters in relation to privity that were urged in objection to the sufficiency of the complaint. The said appellant, in his brief, does not discuss these answers, but says: " What we have said in opposition to the complaint will apply in support of the answers." The complaint being sufficient for the reasons heretofore given, it follows that there was no error in sustaining the demurrers to these answers.

The appellant Ketcham filed a demurrer to the cross complaint of The Indiana Coal Company, which was overruled by the court, and the seventh and eighth specifications of error question this ruling.

The said appellant, in his brief, says: " We are not disposed to discuss either of these errors; we think, perhaps, the cross complaint was technically good." We perceive no objection to it.

The appellant Ketcham filed his cross complaint against The Ohio and Indiana Coal Company, and also filed his answer in three paragraphs to the cross complaint of The Ohio and Indiana Coal Company.

The Ohio and Indiana Coal Company filed a demurrer to the second and third paragraphs of the said appellant's answer to their cross complaint, which the court sustained as to the second paragraph, and overruled as to the third paragraph. The ninth specification in the assignment of errors questions this ruling of the court sustaining the demurrer to the second paragraph of the said appellant's answer to the cross complaint of the Ohio and Indiana Coal Company. Upon this the appellant Ketcham, in his brief, presents the question as follows:

" The court will observe that this second paragraph is not an answer to the whole cross complaint, but is expressly limited to so much only of the cross complaint as denies that the original lease was ever properly acknowledged or recorded, or entitled to record; and the allegations in the answer are pleaded by way of estoppel, and charge that Job Johns, the original lessee, caused and procured this lease to be acknowl-

Ketcham *et al. v.* The Brazil Block Coal Company.

edged, in the form in which it was acknowledged, and also procured it to be placed of record in the recorder's office of Clay county, Indiana, and in every assignment and transfer of said lease from Job Johns down to The Ohio and Indiana Coal Company, the said lease was identified and referred to only as the one recorded in lease record, at page 57, etc., in the recorder's office of Clay county, and that said Ketcham knew of such assignments and the references therein contained as to said lease, and relied on them as true at the time he purchased said land and paid for it; that he never saw the original, nor did he know that the original was not properly recorded, if such be the fact, etc., etc. We claim that this answer constituted a good estoppel to so much of the cross complaint as it was addressed to. The facts therein stated would certainly have precluded Job Johns, the original lessee, from contesting the record of that lease, and, under the law, his privies would be estopped by whatever would estop him."

The substance of this answer is that, whether the original lease was properly acknowledged, properly recorded, and properly entitled to record or not, still the record, right or wrong, bound the original lessee, and also bound his assigns, and that the appellant Ketcham, finding such a record on the books of the recorder's office, had a right to rely on it if he had never seen the original and did not know that it was not properly recorded. But if the said appellant bought with such notice of the true contents of the lease as the cross complaint avers he had, no estoppel could arise upon the language of the record, in his favor, even if the lease were properly entitled to be recorded. But further, all the evidence admissible under said second paragraph of answer was admissible under the general denial, and the record shows that a certified copy of the lease as recorded was offered by the appellant and was admitted in evidence, and that, although the appellant undertook to show that he was an innocent purchaser without notice, he utterly failed so to do. There was no error in sustaining the demurrer to the second paragraph of the appellant

Ketcham's answer to the cross complaint of the Ohio and Indiana Coal Company.

The Ohio and Indiana Coal Company filed a general denial to the cross complaint of the appellant Ketcham, and also filed a reply in denial of the third paragraph of the said appellant's answer to the cross complaint of said company against him. The cause was then at issue, and the parties agreed that all matters of evidence, competent under any valid pleading, might be admitted under the said general denial.

The appellant Ketcham moved the court to submit said cause to a jury for trial as to all the issues. The court overruled this motion and tried the case without a jury, upon the issues between the appellee and the appellants, and found for the appellee, and entered a judgment accordingly, directing the appellants to interplead, and enjoining them as demanded in the complaint.

In the tenth specification of the assignment of errors the appellant Ketcham complains of the ruling of the court in refusing a trial by jury as aforesaid; but this matter is not a proper subject for an assignment of error, although it might have been alleged as a reason for a new trial.

The court then directed the issues between the appellants to be tried as a chancery suit, and submitted to a jury three questions of fact to be determined by them for the information of the court. See R. S. 1881, section 409. The jury found upon these questions, and upon their finding and other evidence heard by the court on the issues between the appellants, there was a finding for The Ohio and Indiana Coal Company. The motion of the appellant Ketcham for a new trial was overruled, and judgment was rendered on the finding.

The eleventh and last specification of error complains of the overruling of the motion for a new trial.

Twelve reasons were assigned for a new trial; of these the first is that neither the verdict of the jury nor the finding of the court is sustained by sufficient evidence, and that each of them is contrary to law.

Ketcham *et al. v.* The Brazil Block Coal Company.

The original lease contained the following provisions, to wit: "That the lessee and his assigns shall pay to the party of the first part, his heirs or assigns, within two years from date hereof, the sum of $100, and the third year the sum of $200, and the fourth year $400, during the continuance of this agreement, and the failure to make these advance payments yearly upon request, or within thirty days after demand, shall be deemed an abandonment of this agreement or lease; but it is understood and agreed that any advance payments of $100, &c., as before mentioned, to be paid yearly, that shall be made to the party of the first part, are to apply on the payment of rent of coal first mined thereafter." This "rent of coal," or royalty, as it is sometimes called, was fixed in the agreement at fourteen cents for every 2,240 pounds.

The lease, as recorded, was exactly the same as the original lease, except that it omitted the "&c." after the words one hundred dollars, so that the clause as to the advance payments was in the record as follows: "But it is understood and agreed that any advance payments of $100, as before mentioned, to be paid yearly, that shall be made to the party of the first part, are to apply on the payment of rent of coal first mined thereafter."

The appellant's counsel, in their brief, concede that if the record had contained the "&c." then the claim of The Ohio and Indiana Coal Company to these royalties would have been good. They say: "On behalf of Ketcham we concede that if the original lease had been correctly recorded, the character '&c.,' following the word dollars in the clause referred to, would have entitled the lessee to deduct out of the rent on coal first mined all the annual sums paid under the lease, but that under the lease, as recorded, omitting the character '&c.,' it does not entitle the lessee to deduct more than $100 out of the royalty or rent of coal first mined. In other words, the lease, as recorded, expressly restricts and limits the right of the lessee to deduct but $100 out of the royalty or rent of coal first mined."

If such be the effect of the record, it is because the record

amounts to notice of the terms of the lease, but if, notwithstanding such record notice, the appellant had actual notice of the mistake in that record, if he was fully informed by the parties what the language of the clause under consideration really was, so that he knew when he purchased what the contract really was, and that by its terms all the annual sums paid under the lease were to be deducted out of the rent on coal first mined thereafter, then as against such actual notice the constructive notice given by the record would amount to nothing.

There certainly was evidence tending to show that Ketcham not only had such notice of the claims of the plaintiff and The Ohio and Indiana Coal Company as would put him upon enquiry, but had actual notice that the contract required all the annual payments to be deducted out of the royalties. Where there is such evidence the finding of a court or the verdict of a jury can not be set aside for the reason alleged, that it is not sustained by sufficient evidence, and is, therefore, contrary to law. *English* v. *State, ex rel.*, 81 Ind. 455.

The second and third reasons for a new trial relate to instructions given to the jury and to those asked by Ketcham and refused. The only objection in reference to these instructions made by the appellant in his brief is a general one, to wit: " That the instructions given by the court were a very imperfect statement of the law, not covering more of the merits of the case than were embraced in the three interrogatories submitted by the court; while the instructions asked by Ketcham and refused by the court cover and embrace the substantial merits of the controversy, and would have enabled the jury to render a proper general verdict, in which event alone does our statute authorize a jury to answer interrogatories as to particular questions of fact."

The foregoing objections are not available in a case like this; this was a case of equitable jurisdiction triable by the court under section 409 of the R. S. 1881. The court, for its information, caused three questions of fact to be tried by a jury; the jury had nothing to do with any other questions,

and had no right to return a general verdict upon all the matters in controversy. And these questions of fact, to be tried by a jury in such a case, are not governed by the rules prescribed in sections 546 and 547 of the R. S. of 1881, in reference to interrogatories to be answered by the jury in case they find a general verdict. In such a case of equitable jurisdiction, the court, exercising the powers of a chancellor, under section 409, *supra,* "If he refers any question of fact to a jury, * is still to be satisfied in his own conscience that the finding is correct, and the decree must be made as the result of his own judgment, aided, it is true, by the finding of the jury." He is not bound to take the opinion and finding of a jury, and when he does so take it, he is not concluded by it; he must consider it together with all the evidence in the cause, and must collect from the whole what may satisfy his conscience. *Dunphy* v. *Kleinsmith,* 11 Wal. 610; 2 Smith Ch. Prac., pp. 84–85; 1 Graham & W. New Trials, 579–589. So far as the motion for a new trial related to the giving or refusing to give instructions to the jury, there was no error in overruling it.

The 10th, 11th and 12th reasons for a new trial are that the court overruled the appellant Ketcham's objection to receiving the verdict of the jury, and overruled his motion to direct the jury to retire for further deliberation, and to make their answers more specific and certain, and that the court refused to submit to the jury interrogatories put by the said appellant, and submitted to the jury for their decision the three questions of fact hereinbefore, alluded to. These three questions of fact are as follows:

" 1. Did said lease when executed contain the character '&c.' between the words ' one hundred dollars' and the words ' as before mentioned'?

" 2. At the time Ketcham purchased and paid for the land what actual notice did he have, if any, of the defendant's, The Ohio and Indiana Coal Company's, or its assignor's, claim to

have all the annuities prepaid credited upon the royalty on coal subsequently mined?

"3. Had Andrews or Ketcham, at the time of the purchase, knowledge of a lease containing the character '&c.'?"

These three questions were properly submitted to the jury under the chancery practice re-established by section 409 of the Revised Statutes of 1881. It was discretionary with the court to submit such questions to a jury or not. The appellant Ketcham had no right to insist on the jury deciding other questions, and, when the jury returned their verdict, it being purely advisory, if the court, which had heard all the evidence, was satisfied with the verdict, it committed no error in refusing to require the jury to deliberate further, or to make their answers more specific and certain. "The object of issues, directed out of chancery, being to inform the conscience of the court, if the verdict of the jury prove satisfactory, although the rules of strict law, in the admission or rejection of evidence, or directions to the jury, may not have been complied with, a new trial will be refused." Graham & W. New Trials, 579, 589; 2 Smith's Ch. Prac. 84, 85; *Dunphy* v. *Kleinsmith, supra.* The objections stated in the 10th, 11th and 12th reasons for a new trial are not available in a proceeding of this kind.

The 7th reason for a new trial is not discussed in the appellants' brief, and is, therefore, regarded as waived.

The remaining reasons for a new trial are the fourth, fifth, sixth, eighth and ninth. As to these the appellant Ketcham says that they all relate substantially to the same question, and that he therefore discusses them collectively. As to the sixth of these reasons the record shows that as to the question therein referred to an objection was made by the said appellant, but no ruling of the court was demanded thereon, and it appears that no ruling was made, and no exception taken in reference to that question. Therefore, we can not consider the said sixth reason.

The fourth reason for a new trial is that the court allowed William Campbell to testify that while he and Andrews were

negotiating for the sale of the land, he said to Andrews, " If we are going to make a trade I want this thing understood, that all the money that had been paid to me as advanced roy-alty had to come out of royalty on coal first mined," and that he (Andrews) said " he understood that it was all to be paid back before I (Campbell) was to receive anything." Camp-bell was the owner of the land leased. He afterwards sold it to Ketcham, the appellant, subject to the lease. Andrews was Ketcham's agent, making the purchase for him, and while the negotiations for the purchase were going on the conversation offered in evidence took place. It was clearly competent.

The question presented by the fifth, eighth and ninth reasons for a new trial is whether evidence of the action and inter-pretation of the parties to the contract through a series of years was admissible for the purpose of showing its true con-struction. Such evidence is not admissible where a contract is plain and certain and free from ambiguity, because, in such a case, there is no necessity to go beyond the language of the contract for its meaning; but where there is uncertainty, ob-scurity or ambiguity in the language, then the acts of the parties in connection therewith furnish valuable aid in the construction of it. *Morris* v. *Thomas*, 57 Ind. 316, 322; *Heath* v. *West*, 68 Ind. 548. Evidence of the mutual acts of the parties to the contract in reference to the fulfilment of it, after it was entered into, is admissible to show what their in-tention and understanding was in the use of language other-wise somewhat obscure. *Bates* v. *Dehaven*, 10 Ind. 319; *Reissner* v. *Oxley*, 80 Ind. 580.

The appellant Ketcham claims that he was bound only by the lease as recorded, and that the meaning of it is too plain to need any construction founded upon the conduct of the parties; but on the other side it is claimed that he had notice of the true contract, and of the claims of the lessees and their assigns, and also that the defective record of the contract is uncertain and ambiguous, and that its words fail to show con-

clusively that the payment to be deducted from the royalties is a simple payment of $100.

The use of the word " payments " in the disputed clause of the contract, followed by the statement, such payments " as before mentioned to be paid yearly," and the use of the plural verb "are," do not indicate a single payment, and create at least obscurity enough to warrant the application of the rule laid down in the cases hereinbefore cited of *Morris* v. *T homas*, *Heath* v. *West* and *Bates* v. *Dehaven*. We think there was no error in admitting the evidence objected to in the fifth, eighth and ninth reasons for a new trial.

We have now considered all the points presented by the appellant, and we find no error in the record. The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and it is hereby in all things affirmed, at the costs of the appellant. Ketcham.