

IN THE

# Court of Appeals of Indiana

Figg Bridge Builders, LLC,

*Appellant-Third-Party Defendant*



**FILED**

Jul 09 2024, 10:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Cline Avenue Bridge, LLC, and United Bridge Operating, LLC,

*Appellees-Plaintiffs and Counterclaim Defendants*

v.

Great American Insurance Company

*Appellee-Defendant / Counterclaimant / Third-Party Plaintiff*

July 9, 2024

Court of Appeals Case No.
23A-PL-2807

Appeal from the Lake Superior Court

The Honorable John M. Sedia, Judge

---

**Opinion by Judge Mathias**
Judges Riley and Brown concur.

**Mathias, Judge.**

[1]     Indiana Trial Rule 22 enables a party to interplead when that party "may be exposed to double or multiple liability." The Rule further provides that "[a]ny party seeking interpleader . . . may deposit with the court the amount claimed" by the other parties. Ind. Trial Rule 22(D). In the usual scenario, when a party deposits with the trial court clerk an amount claimed, the party does so with an admission that that amount "is owing" to "one or more of the parties interpleaded." T.R. 22(C)(1). For example, an insurer that knows it must pay out on a policy but is unsure as to how to apportion the policy amount between several claimants might use Rule 22 to admit liability under the policy, deposit the policy amount with the trial court, and then ask the court to declare that the insurer be discharged from liability on claims to that amount while the claimants dispute its apportionment among themselves. In that scenario, the party seeking interpleader may not be charged with prejudgment interest on the amount claimed for the time after that amount has been deposited with the trial court.

[2] But Rule 22 also permits a party to interplead and assert that an "unfounded liability" is alleged to be owing to one or more of the parties interpleaded. *Id.* And the Rule does not prohibit parties that assert an unfounded liability to nonetheless deposit the amount claimed with the trial court clerk. Thus, in those scenarios, the party seeking interpleader may seek to have some or all of the deposited amount returned to it. *See Blinzinger v. Am. Healthcare Corp.*, 505 N.E.2d 449, 453 (Ind. Ct. App. 1987).

[3] The issue in this appeal is whether a party that had a bona fide reason to interplead—that is, it faced a sincere issue of multiple liability from other claimants to a deposited amount—but also, unconventionally, asserted its own exclusive claim to the deposited amount must pay interest on that amount during the time after the deposit in which that party litigated its own claim. We conclude that, because the facts here demonstrate that the party that sought interpleader had its own claim resolved while the other claimants to the deposited amount were still disputing their claims to it, the trial court did not err when it denied the request for interest.

## Facts and Procedural History

[4] In June 2017, Cline Avenue Bridge, LLC ("CAB") entered into a $134-million construction contract with Figg Bridge Builders, LLC ("Figg") for Figg to design and construct the Cline Avenue Bridge in East Chicago. In April 2020, about three months prior to Figg's anticipated completion of the bridge, CAB terminated the construction contract and instructed Figg to leave the project.

CAB and Figg each alleged that the other had breached the construction contract, and their dispute proceeded to arbitration before a panel of arbitrators. In July 2022, the arbitrators found that CAB had breached the construction contract, and they awarded Figg a net judgment of $4.4 million in damages, costs, and attorneys' fees. The arbitrators further ordered CAB to pay Figg within thirty days, after which post-judgment interest would begin to accrue on the award in accordance with Indiana Code section 24-4.6-1-101 (2022).[1]

Shortly before the expiration of that thirty days, CAB moved to interplead,[2] in an existing action involving it and Figg, and to have the $4.4 million deposited with the trial court clerk. In CAB's motion to interplead, CAB stated as follows:

> [CAB], pursuant to Indiana Trial Rule 22, moves for leave to deposit $4,404,809.32 with the Clerk of the Court, funds equal to the net amount awarded by the [panel of arbitrators] to [Figg] . . . . The interpleader of these funds is warranted because (1) there is a dispute between [Figg], [Figg's] insurer Lexington Insurance Company, and Great American Insurance Company . . . over whether the award should be paid to [Figg], Lexington, or [Great American], and (2) CAB may move to

---

[1] For the first time on appeal, CAB states that post-judgment interest is not appropriate for an arbitration award and instead cannot be considered until the trial court confirms the award. Appellee's Br. at 20. CAB's assertion has not been preserved for appellate review, and we do not consider it.

[2] Interpleader is traditionally a pleading, not a motion, and the unusual posture of this particular motion is especially noteworthy with respect to the claim for post-judgment, rather than prejudgment, interest. Although the differences between post-judgment and prejudgment interest are not material to our resolution of this appeal, we doubt that we would approve of the use of interpleader motions in most post-judgment circumstances.

vacate the award and its deadline to do so is not until October 12, 2022. . . .

Appellant's App. Vol. 2, pp. 168-69. The trial court granted CAB's motion, and, on September 22, CAB deposited the amount claimed with the trial court clerk. In that same action, Figg timely moved to have the trial court confirm the arbitration award.

[7] In October, CAB moved to have the trial court vacate the arbitration award. In November, Lexington filed its appearance, and in December it filed a motion to intervene. The parties litigated whether Lexington should be permitted to intervene along with the competing motions to either confirm or vacate the arbitration award. In February 2023, the trial court entered its order confirming the arbitration award and simultaneously denying CAB's motion to vacate. That same day, the court granted Lexington's motion to intervene.

[8] Great American then moved for the distribution of the deposited funds, to which Lexington objected. On April 17, CAB informed the court that it did not object to the distribution of the funds between the claimants. On June 26, Lexington withdrew its objection to distribute the funds, and, the next day, the court ordered the amount deposited with the trial court clerk to be distributed to Figg and Great American by way of a joint check.

[9] In late July, Figg moved for an award of post-judgment interest against CAB on the arbitration award. Specifically, Figg sought interest at the statutory rate for the period of time between the thirty-first day after the arbitrators' decision to

April 17, 2023, when CAB had withdrawn its claim to the deposited funds. In October, the court granted Figg's request in part and denied it in part. In particular, the court agreed that Figg was entitled to post-judgment interest from CAB on the $4.4 million award, but, according to the court, Figg was entitled to interest only from the thirty-first day after the arbitrators' decision to September 22, 2022, when CAB had deposited the amount claimed with the trial court clerk.[3]

This appeal ensued.

## Discussion and Decision

Figg asserts that the trial court misinterpreted Indiana law when the court concluded that the award of post-judgment interest in an interpleader cannot include the post-deposit period in which the party that deposited the funds with the court continued to assert its own claim to those funds.[4] We review questions of law *de novo. E.g., Spells v. State*, 225 N.E.3d 767, 771 (Ind. 2024).

We have previously explained that interpleader

> is a remedial device that allows parties to be joined in an action where there is uncertainty as to which of multiple claimants a party may be liable. Ind. Trial Rule 22(A)*; Indianapolis Newspapers, a Div. of Ind. Newspapers, Inc. v. Ind. State Lottery*

---

[3] CAB does not cross-appeal the trial court's judgment.

[4] We agree with Figg that CAB's assertion that this issue has not been preserved for our review is meritless. However, we agree with CAB that the issue on appeal is limited to the court's judgment on interest and does not reach the propriety of the court's decision to grant CAB's motion to interplead.

*Comm'n*, 739 N.E.2d 144, 151 (Ind. Ct. App. 2000) (citing 45 Am. Jur. 2d, Interpleader § 1, at 454-55 (1999)), *trans. denied*. One important purpose of interpleader is "to prevent one of multiple creditors from obtaining the advantage of obtaining the first judgment." 22 Ind. Prac., Civil Trial Prac. § 17.17 (Interpleader) (2d ed.). Another is to protect a party from double or multiple exposure to liability. *Id.* Insurance companies frequently execute their duty to protect their insured from additional liability by bringing such interpleader actions.

*First Chicago Ins. Co. v. Collins*, 141 N.E.3d 54, 64 (Ind. Ct. App. 2020).

[13] Those purposes for interpleader are reflected in the language of Trial Rule 22, which provides that interpleader may be used when the party requesting it "may be exposed to double or multiple liability." T.R. 22(A). The Rule similarly provides that a request for interpleader is sufficiently stated if, among other things, the request "declares that . . . the person seeking interpleader is or may be exposed to double or multiple liability" *and* if the request "admits that a liability is owing or it states that a totally or partially unfounded liability is asserted to be owing to either one or more of the parties interpleaded." T.R. 22(C). The Rule further permits the party seeking interpleader to "deposit with the court the amount claimed" and also to request that the party be "discharged from liability as to such claims, and the action continued as between the claimants . . . ." T.R. 22(D).

[14] Interpleader is an action in equity, and, historically, interpleader actions required the party seeking interpleader to admit that he "has no beneficial interest in the thing claimed," e.g., the money or property that would then be

deposited with the trial court clerk. *Nofsinger v. Reynolds*, 52 Ind. 218, 225 (1875). However, in *Nofsinger*, the party seeking interpleader was unsure of the actual amount being claimed by two other parties that had asserted liens on his real property; he therefore overestimated his deposit with the trial court clerk, sought interpleader, and requested the return to him of any portion of his deposit that remained after the claimants had been satisfied. Our Supreme Court stated that the property owner's request was "not properly one of strict interpleader" as he did not disclaim his interest in the deposit. *Id.* But the Court concluded that the request was "in the nature of . . . interpleader" and was permissible for the property owner "to ascertain and establish his own rights" in the face of "other conflicting rights between third persons." *Id.*

[15] In helping to modernize our procedural rules on interpleader, the Civil Code Study Commission referenced *Nofsinger* and recommended language to eliminate the difference between "strict interpleader" and a claim "in the nature of interpleader." Civil Code Study Comm'n Comments to T.R. 22, *reprinted in* 2 Stephen E. Arthur & William F. Harvey, Ind. Prac., Rules of Proc. Ann. R. 22 (4th ed., Jan. 2024 update). The recommended language was intended to "make[] no substantial departure from present Indiana law." *Id.* The Civil Code Study Commission's recommendations are reflected in the current language of Trial Rule 22. *See id.*

[16] With that background in mind, we turn to Figg's argument that interpleader under Trial Rule 22 requires the party seeking interpleader to make an "unconditional" surrender of the amount claimed to avoid having interest on

that amount later assessed against that party. Appellant's Br. at 14-15. According to Figg, that means that the party seeking interpleader cannot also assert that it is the rightful owner of the entirety of the amount claimed.

[17] In support of its argument on appeal, Figg first relies on *United Farm Bureau Family Life Insurance Co. v. Fultz*, 176 Ind. App. 217, 375 N.E.2d 601, 611-12 (1978). In *Fultz*, a wife had been charged with the murder of her husband. After his death, she filed a claim to collect the proceeds of his life insurance policy. The insurer declined to pay on her claim while her criminal trial was pending. She was then acquitted, and, two months later, she filed a civil suit against the insurer to recover the proceeds under the policy. In response, the insurer moved to interplead, named the wife and the husband's estate as claimants, and deposited the policy amount with the trial court clerk.

[18] A jury found for the wife, and the court entered an award of prejudgment interest "from the date of the claim to the time of judgment." *Id.* at 611. On appeal, we held, in relevant part, that the court's calculation of interest was in error. *Id.* at 612. As we explained:

> [the] interest . . . was properly assessed until the proceeds of the policy had actually been paid either to [the wife] or to the court in an interpleader action. Therefore, the court erred to the extent that it calculated the amount of prejudgment interest owed by [the insurer] as beginning to accrue from the date of [the wife's] claim and continuing to the date of judgment; it should have calculated the prejudgment interest from the date of [the wife's] original claim . . . to the time when [the insurer] actually tendered the money into court as a part of its request for interpleader.

*Id.* (footnote omitted).

[19] In a footnote, the *Fultz* panel cited *Murphy v. Travelers Insurance Co.*, 534 F.2d 1155, 1164-65 (5th Cir. 1976), for supporting authority, which Figg also relies on here. In *Murphy*, the United States Court of Appeals for the Fifth Circuit, discussing Texas law, stated:

> The award of prejudgment interest is likewise improper. As noted by [the insurer and interpleader movant], under Texas law, an insurance company is liable for interest on unpaid policy proceeds until its debt is discharged, but following the deposit of the funds into the registry of the court, they become the property of whichever claimant establishes his right thereto. In interpleader cases in Texas, the general rule concerning accrual of interest may be stated as follows:
>
>> Once a stakeholder makes an unconditional offer to give up possession of a disputed fund, it ceases to exert that dominion over the money sufficient to justify an obligation to pay interest thereon, and the rule is that once such an unconditional tender is made, any liability for interest ceases as of the date of tender.
>
>> Payment of the proceeds into the registry of the court or an offer to do so is a sufficient "unconditional tender" to terminate the claimant's right to interest following the tender.

*Id.* (citations omitted).

[20] Figg's central argument on appeal focuses on the Texas requirement that the party seeking interpleader make an "unconditional offer" of the money or property claimed. *See id.* But the word "unconditional" does not appear in

Indiana Trial Rule 22, and Figg's dependence on the language of the Texas rule is misplaced here. Indeed, our opinion in *Fultz* stands for the proposition—with which we agree—that a party who seeks interpleader under Trial Rule 22, admits liability on the amount claimed, and deposits that amount with the trial court clerk may not be charged with interest on that amount following the deposit. 375 N.E.2d at 611-12. Our analysis in *Fultz* is consistent with the history, language, and purposes of Trial Rule 22. And, insofar as it has relevance to Indiana law, we do not read *Murphy* to stand for a different proposition.

[21] The history and language of Trial Rule 22 also make clear that a party seeking interpleader may make a claim on the subject matter of the dispute. Trial Rule 22(C)(1) expressly permits a party to seek interpleader without admitting liability when the party instead states that "a totally or partially unfounded liability is asserted to be owing to either one or more of the parties interpleaded." As indicated above, that language was intended to capture circumstances such as those in *Nofsinger*. Thus, we conclude that, as long as the party seeking interpleader states a bona fide claim of multiple liability and deposits the amount claimed with the trial court clerk, the rule from *Fultz* that interest ceases to accrue against that party following the deposit remains correct.

[22] Of course, CAB's motion to interplead was atypical in that CAB asserted its own *exclusive* right to the funds that CAB had deposited with the trial court clerk. We are not aware of a comparable use of interpleader in our precedent.

But CAB's assertion was not the only basis for its motion to interplead. CAB moved to interplead for two reasons: first, because of the multiple liability it faced from Figg's, Lexington's, and Great American's competing claims to the $4.4 million; and, second, because of its own claim to that amount. CAB's own claim notwithstanding, the multiple liability CAB faced from the other claimants is undisputed in this appeal and, thus, was a valid reason for CAB to seek interpleader.

[23] Significantly, the disagreement between Figg, Lexington, and Great American over the deposited funds moved independently from and outlasted CAB's own claim to those funds. The trial court granted CAB's motion to interplead in September 2022. Lexington, a material party to the interpleader, filed its appearance in November and moved to intervene in December. The trial court did not grant Lexington's motion to intervene until February 2023, and it did so on the same day that the trial court denied CAB's motion to vacate the arbitration award. From there, CAB withdrew its claim to the deposited funds in April, while Lexington, which had a standing objection to the distribution of the deposited funds, did not withdraw its claim to the funds until June.

[24] Thus, had CAB's motion to interplead alleged only that it faced multiple liability from the other claimants' competing claims, we would have little trouble concluding that the trial court was correct under *Fultz* to not assess interest against CAB during the post-deposit period. And that basis for CAB's motion to interplead persisted into June 2023, well after CAB's own claim to the deposited funds had been rejected by the trial court and after CAB had

withdrawn that claim. Indeed, CAB's claim to the deposited funds was effectively over by the time the last of the interpleaded parties formally intervened. In other words, CAB's claim to the funds did not actually matter to Figg's later ability to access those funds.

[25] For all of these reasons, we conclude that the trial court did not err when it declined to award interest against CAB and for Figg for the time between CAB's deposit of the amount claimed in September 2022 and CAB's withdrawal of its claim for that amount in April 2023, and we affirm the trial court's judgment.

[26] Affirmed.

Riley, J., and Brown, J., concur.

ATTORNEYS FOR APPELLANT

Kevin E. Steele
Burke Costanza & Carberry LLP
Valparaiso, Indiana

Robert T. Boylan
Eric J. Shukis
Foran Glennon Palandech Ponzi & Rudloff PC
Chicago, Illinois

ATTORNEYS FOR APPELLEE CLINE AVENUE BRIDGE, LLC

Michael A. Wukmer
Jenny R. Buchheit
Nathaniel M. Uhl
Ice Miller LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE GREAT AMERICAN INSURANCE COMPANY

Steven E. Runyan
Jason T. Mizzell
Kroger Gardis & Regas, LLP
Indianapolis, Indiana