[L. A. No. 18940. In Bank. Dec. 3, 1946.]

PHOENIX MUTUAL LIFE INSURANCE COMPANY (a Corporation), Plaintiff, v. HILDA OLSEN BIRKE-LUND, Respondent; RUTH LILLIAN BIRKELUND, Appellant.

Reynolds & Painter and Sidney A. Cherniss for Appellant.

Helgoe & Hart and John K. Ford for Respondent.

SCHAUER, J.—Plaintiff insurance company filed this action in interpleader after each of the two defendants had made claim upon it for the proceeds of a policy of insurance issued by it in 1921 on the life of James R. Birkelund, now deceased. One of the defendant-claimants is Hilda Olsen Birkelund, hereinafter called Hilda, the first wife of the decedent, and the other defendant-claimant is Ruth Lillian Birkelund, hereinafter called Lillian, who also entered into a marriage with the decedent. Hilda asserts equitable claims, deriving from a property settlement agreement with James, executed in 1931, whereby he agreed "to deliver" the policy to Hilda and she agreed to pay the accruing premiums. James

did not deliver the policy to Hilda but instead, in 1932, named Lillian as beneficiary and delivered the policy to her. For approximately eleven years after the settlement with Hilda, James and Lillian paid the premiums. Then James died and both Hilda and Lillian demanded the proceeds. Previously Hilda had never demanded the policy and had paid no premiums. Lillian urges both a legal claim as the beneficiary named in the policy and an equitable claim, not pleaded, based on Hilda's asserted neglect. She appeals from a judgment decreeing that the proceeds of the policy, less $271.20 awarded to her as repayment of premiums paid by her on the policy (and subject to costs awarded Hilda), shall be paid to Hilda. We have concluded that Hilda has established an equitable right to recover such proportion of the proceeds of the policy as the amount of premiums paid at the time of the property settlement agreement bears to the total premiums paid and that Lillian is entitled to the remainder.

As indicated above, by the terms of the policy as it stood at the death of the insured Lillian is the designated beneficiary and is, accordingly, prima facie entitled to its proceeds unless Hilda has established superior equitable rights. To establish such rights Hilda relies upon a property settlement agreement with James, executed in 1931 in the State of Minnesota where the parties were then domiciled, whereby, among other things, James agreed "to deliver" to Hilda the policy in question subject to a loan of $450. No specific date for the delivery was fixed. James agreed to pay the *interest* on the policy loan but not the principal. Hilda agreed "to pay the premiums" on the policy "subsequent to the current year [1931] out of the alimony and support money received from the defendant." The agreement further provided that "the . . . interest of the defendant [James] in the homestead . . . be and is hereby set over and given to the plaintiff [Hilda] . . . That the defendant [James] . . . agrees to pay all the taxes . . . on said premises . . . for the year 1930 on or prior to the 31st day of October, 1931, and . . . to give to the plaintiff all of the household effects and furniture now in the home . . . [and] to pay to the plaintiff the sum of Two Hundred Fifty Dollars . . . per month, beginning the 1st day of November 1931, said payment . . . to constitute all of the alimony which said defendant shall be required to pay . . . That the foregoing is a full and complete property settlement between the parties. . . ."

The settlement was first entered into on October 26, 1931, and at that time the provision relative to insurance read in full as follows: "The defendant agrees to deliver to said plaintiff herein an insurance policy or policies upon the life of said defendant with premiums paid for the year 1931, in the amount of at least Ten Thousand Dollars ($10,000.00), said policy or policies not to be incumbered by any loan. The said plaintiff herein agreeing to pay the premiums thereon subsequent to the current year out of the alimony and support money received from the defendant."

On November 23, 1931, the agreement regarding insurance was modified to read as follows: "The defendant agrees to deliver to the said plaintiff herein insurance policies upon his life as follows: Two policies for Five Thousand ($5,000.00) Dollars, each in the Phoenix Mutual Insurance Company, each of which policies is encumbered with a loan of Four Hundred Fifty ($450.00) Dollars, and one policy in the Berkshire Life Insurance Company in the amount of Twelve Hundred ($1200.00) Dollars, which later policy is unencumbered by any loan. The plaintiff herein agreeing to pay the premiums subsequent to the year 1931 on the two policies with the Phoenix Mutual Insurance Company, said payments to be made out of the alimony and support money received from the defendant herein. The defendant herein agrees to carry at all times the premium on the Twelve Hundred ($1200.00) Dollar policy above named, and in addition thereto to pay at all times the interest as it comes due on the Nine Hundred ($900.00) Dollar loan from the Phoenix Mutual Insurance Company on the two first policies above mentioned." It is upon the language above quoted that Hilda relies to establish her claim to the proceeds of the policy. Only one $5,000 policy is here involved, the other having been cashed in by James in 1937.

On December 10, 1931, the District Court of the Fourth Judicial District, County of Hennepin, State of Minnesota, entered its decree "That plaintiff [Hilda] is not entitled to a decree of divorce from the defendant herein" but "That the defendant [James] shall pay and continue to pay, until further order of the Court, the amounts provided in the stipulation on file herein" (such stipulation being the property settlement hereinabove described), and that "Nothing herein shall be construed as a bar to the prosecution of an action for

divorce on the ground of desertion, when such desertion shall have reached the time when it becomes a ground for divorce."

The policy in question recites that the insurer "Agrees to pay to [the named beneficiary] . . . the Sum of Five Thousand Dollars, upon receipt at its Home Office of this policy duly discharged together with due proofs of the death, while this policy is in force, of James R. Birkelund . . . The Company Will Also Pay *to The Insured* During Permanent and Total Disability An Income of Fifty Dollars a Month and will waive the payment of premiums hereunder during such disability . . ." (Italics added.) The stated premiums were fixed at $67.80 "payable on the 2nd day of each February and August until fifty-six full years' premiums shall have been paid or until the death of the Insured." The policy further provides: "9. Beneficiary Clauses . . . (b) The insured if of legal age may, whenever and as often as he likes, change any beneficiary designated herein by filing at the Home Office of the Company a written notice thereof duly executed and accompanied by the policy for record and endorsement of the change thereon by the Company. Unless the notice is so recorded and endorsed it shall not take effect, but when recorded and endorsed, whether the insured be then living or not, it shall relate back and take effect as of the date of the execution of said notice by the insured.

"(c) The interest of any beneficiary hereunder shall be subject to and bound by any assignment, pledge or release of this policy by the insured, dated either prior or subsequent to the nomination of such beneficiary."

At the time the policy was first issued it contained a special indorsement providing that "At the request of the insured . . . the beneficiary provisions of paragraphs b and c, Section 9 hereof are hereby made inoperative and the beneficiary hereunder is made irrevocable." Hilda then was named as the sole and irrevocable beneficiary. However, on April 23, 1930, Hilda joined with James in a writing cancelling the above quoted special indorsement and restoring to the insured, James, the right to change beneficiary as provided in section b. On that same date James exercised his right to change beneficiary by nominating Hilda as primary beneficiary and his daughters Mary Jane and Joan as secondary beneficiaries.

In 1931, by the property settlement agreement hereinabove quoted, James agreed to "deliver" the policy to Hilda,

subject to the $450 loan, and she agreed to pay accruing premiums, but, as previously mentioned, the policy was never delivered to Hilda and she never paid any premiums on it. On July 5, 1932, James and Lillian married and thereafter lived together as husband and wife until his death on April 25, 1942. (The legality of this marriage was questioned by Hilda who claimed that she was never completely divorced from James but this issue was held immaterial by the trial court.) On December 20, 1932, James presented the policy to the insurer together with a request for change of beneficiary nominating Lillian as primary beneficiary and his daughters Mary Jane and Joan as secondary beneficiaries. Such change of beneficiary was duly endorsed on the policy and it was returned to James. In the same month he delivered the policy itself to Lillian who thereafter retained it. Subsequently— accruing premiums were paid by James or Lillian, the court finding specifically that Lillian directly paid premiums in the sum of $271.20. There was testimony, not directly disputed, that Lillian, prior to December, 1932 (the date she was named as beneficiary), loaned James about $2,500 and that after that date she loaned him about $7,000. Some of the money so advanced was used for paying obligations of James (including living expenses of James and Lillian and alimony to Hilda). There is, however, no allegation in Lillian's pleadings and no finding by the court that any part of this money was advanced by Lillian in reliance upon her designation as beneficiary or her possession of the policy.

In 1937, at a time when James was allegedly in default in alimony payments, Hilda instituted an action in Los Angeles County to enforce the settlement agreement and the Minnesota judgment. According to the language of her brief (and as supported by her testimony) "She asked her Los Angeles counsel if James could be forced to carry the policies and was advised by her counsel that he could not be so forced." Neither before nor after that time did she ever demand delivery of the policy in question nor did she pay any premium thereon or make any inquiry of the insurer concerning the premiums or the status of the policy although she at all times knew the identity of the insurer.

The record is not entirely clear as to whether James eventually paid all the money to Hilda which he had contracted to pay. It does appear, however, that for a number of years

after the contract was executed he fully performed it except as to delivery of the insurance policies mentioned; that during 1934 and 1935 he suffered from illness and defaulted in a portion of the monthly payments; that Hilda instituted the action above mentioned in California, based on the contract and the Minnesota judgment; that James resumed the payments as ordered and continued making payments until his death. The trial court found, touching upon Hilda's ability to pay the premiums, ''that Hilda . . . has at all times been ready, willing and able to pay the premiums . . . upon the receipt of the said policies.'' The court further found that ''the Property Settlement Agreement between [deceased and Hilda] . . . has never been modified, rescinded, revoked or cancelled. That James R. Birkelund died . . . on April 25,. 1942 . . .; that after November 26, 1931, and before the death of James R. Birkelund, Ruth Lillian Birkelund paid premiums on the policy . . . in the total sum of $271.20. That at the time of the death of James R. Birkelund, there became due and payable under the terms of said policy . . . the sum of $4378.79.''

From the facts found the court concluded ''That by the terms of the property settlement agreement between [deceased and Hilda] . . ., Hilda Birkelund became the irrevocable beneficiary of the policies of insurance covered by said agreement and acquired a vested interest in each of said policies to the extent of the face value thereof. That the notice of change of beneficiary [to Lillian] . . . was ineffective for any purpose because by the property settlement agreement . . . James R. Birkelund had lost all rights in said policies including the right to change the beneficiary. That the property settlement agreement . . . was in full force and effect at the time of the death of James R. Birkelund. That the claims of Ruth Lillian Birkelund to the proceeds of the insurance policies are without right except as to a lien for the amount of the premiums paid thereon by her. That Ruth Lillian Birkelund is entitled to judgment for $271.20 less the costs of Hilda Olsen Birkelund, and . . . is entitled to a lien against the proceeds of said policy for payment of the sum of $271.20 less said costs. . . . That Hilda Olsen Birkelund is entitled to judgment for the balance'' of the proceeds of the policy ''in the sum of $4107.49.'' Judgment was entered accordingly.

As previously indicated each claimant relies, either wholly

or in part, on equitable principles, although Lillian pleaded only her asserted legal claim. At the trial Hilda, through her counsel, stated her theories for recovery as follows: "The first theory is that she denies that she ever signed the document of April, 1930, whereby the right to change beneficiary was restored to Mr. Birkelund. The second theory is that the policy which is the subject of the suit is one of the policies which was given to her by the property settlement agreement, and she is entitled to the proceeds thereof, having been given the policy, and there was nothing left for the deceased to give to anyone else. The third theory is that she and James R. Birkelund were husband and wife and that any premiums paid on the policy from his earnings in California were the community property of Hilda Birkelund and James R. Birkelund and that thereby she would be entitled to a pro rata distribution of some portion of the policy, the proof undoubtedly will show."

Upon ample evidence the trial court resolved the issue of fact on the first theory against Hilda, finding that she had joined with James in executing the document of April 23, 1930, which restored to the policy the provisions giving the insured the right to change the beneficiary. On the third theory, the court held, and apparently properly, that any curtesy, dower or community rights which Hilda might otherwise have had in the policy by reason of premium payments by James during his marriage to Hilda, were merged in the property settlement agreement. This leaves the second theory —that by the property settlement agreement she became entitled to the proceeds of the policy—as the sole basis for the judgment in her favor. This theory, since the agreement to deliver was not actually performed, is essentially equitable in nature. Appellant Lillian attacks the judgment both on alleged weakness in the equitable showing made by Hilda and on asserted legal and equitable strength in her own (Lillian's) position.

It is to be noted first that apparently the trial court did not undertake to determine whether by the agreement "to deliver" the policy to Hilda it was intended that upon such delivery she should become merely an irrevocable *beneficiary* of the policy or should become its *assignee* and complete owner. "[T]here is a vast difference between the assignee of the insured and a mere beneficiary in a life insurance

policy. The rights of the owner of a policy and those of a beneficiary are essentially different." (*Mutual Benefit Life Ins. Co.* v. *Clark* (1927), 81 Cal.App. 546, 554 [254 P. 306].) A contract or irrevocable beneficiary has some, but not necessarily all, of the rights of an assignee. An ordinary beneficiary of a life policy has merely an expectancy of an incomplete and inchoate gift which is revocable at the will of the insured (*Blethen* v. *Pacific Mut. Life Ins. Co.* (1926), 198 Cal. 91, 98 [243 P. 431]) while a contract beneficiary has a vested right *in the proceeds of the policy*. The rule as to contract beneficiaries is stated in Vance on Insurance, pages 591-592: "Thus; where a member of such an association [mutual benefit] agrees that he will secure a certificate for the benefit of a person who promises to pay all dues necessary to maintain that certificate, the insured will not then be allowed to ignore his contract obligation and change the beneficiary thus selected, nor when the designation was in pursuance of an antenuptial contract or other binding agreement. The same rule applies where, after issuance of the certificate, the beneficiary promises to pay, and pays, the premiums under a contract whereby the member promises that she shall have the benefit of the insurance. Such a contract beneficiary, it seems, has not any vested legal right in the certificate, but is rather protected by the doctrine of estoppel, for, even though the insured may have the legal power to change the beneficiary, equity will hold him estopped to do so in violation of his contract." But "the contract beneficiary who has failed to give the consideration promised is in no position to claim protection of her equitable rights beyond the measure of her performance." (Id., p. 592, n. 1; see, also, *Eatman* v. *Eatman* (Tex.Civ.App. 1911), 135 S.W. 165, 167; *Modern Brotherhood of America* v. *Hudson* (1916), 194 Mich. 124 [160 N.W. 406, 409].)

Respondent calls our attention to such cases as *Shoudy* v. *Shoudy* (1921), 55 Cal.App. 344 [203 P. 433]; *Mutual Life Ins. Co.* v. *Henes* (1935), 8 Cal.App.2d 306 [47 P.2d 513]; *Mutual Life Ins. Co.* v. *Franck* (1935), 9 Cal.App.2d 528 [50 P.2d 480]; *Chilwell* v. *Chilwell* (1940), 40 Cal.App.2d 550 [105 P.2d 122]; *Mahony* v. *Crocker* (1943), 58 Cal.App. 2d 196 [136 P.2d 810]. In each of those cases it was held that under the circumstances there present the insured had lost the right, by reason of an agreement entered into by him, to change the beneficiary of the involved policy. In each of

those cases, however, there was either an agreement on the part of the insured to maintain the insurance or else an agreement for delivery of the policy followed by actual delivery thereof to the person asserting the claim. Neither of such circumstances is here present. It is undoubtedly true that the execution of the settlement contract by Hilda constituted consideration for the agreement by James to ''deliver'' the policy to her. Her agreement to pay the ensuing premiums may have been a part of the consideration flowing to James. It will be remembered that the policy provided for the payment of $50 a month to James in the event he became totally and permanently disabled. If by delivery of the policy to Hilda it was intended merely to constitute her the irrevocable beneficiary of the policy James would still have retained the right to receive the indemnity payments in the event he became disabled. If, on the other hand, to ''deliver'' the policy to Hilda meant to *assign* the policy to her, then she was to become the complete owner of it and the indemnity payments, if they ever accrued, would also belong to her. Likewise, it is to be remembered that the two daughters of James were named as secondary beneficiaries and it may well have been in the mind of James that he desired the premiums paid by Hilda out of the monthly payments he was to make to her, because, for a time at least, he wanted the protection maintained for the daughters and felt that he would be unable, personally, to continue paying the premiums because of the amount he agreed to pay Hilda. But notwithstanding the fact that there was ample consideration for James' agreement to ''deliver'' the policy, whether that meant to constitute Hilda the irrevocable beneficiary or to assign the whole policy to her, it does not necessarily follow, in the light of the findings and the facts of this case, that Hilda is entitled to all the proceeds of the policy less only the premiums found to have been directly paid by Lillian.

The findings of the court leave it uncertain as to what was the intention of the parties and the effect of their acts. If the effect of the agreement was to constitute Hilda a contract or irrevocable beneficiary, her recovery, as previously indicated, may be limited in equity by her failure to perform the executory portion of the agreement. By the agreement she was entitled to receive the policy with the premiums paid for the year 1931. That was all that James

undertook to deliver. Hilda's neglect to pay the ensuing premiums and her leaving of the policy in the possession of James with at least the apparent right to change the beneficiary should, under the circumstances shown here, be deemed to constitute a consent that he change the beneficiary insofar as values might be added to the policy by the payment of future accruing premiums. (Any theory that James and Lillian paid the premiums for the benefit of Hilda is effectively negated by the fact that Lillian was named as beneficiary.)

▇▇ Likewise, even if the findings of the court can be construed as determining that the intention of the parties was to effect an agreement for assignment of the policy, we still view the findings as inadequate to support the judgment to the extent that it awards Hilda such portion of the value of the policy as is represented by premiums which she agreed to, but did not, pay. The agreement to "deliver" the policy can be at most an unexecuted agreement to assign operating as an equitable assignment of the proceeds rather than of the policy itself. (45 C.J.S. 43, § 420; *Chilwell* v. *Chilwell* (1940), *supra,* 40 Cal.App.2d 550, 553.) Hence it appears that although Hilda might, during the lifetime of James, have maintained an action at law against James on the settlement contract for the recovery of the policy, her claim here for the proceeds is essentially equitable in nature. It is asserted not against James but against Lillian, who, on any theory of the case, has acquired intervening rights of some nature and to some extent.

The pleadings of the respective claimants, particularly those of Lillian, fall far short of defining the theories which they invoke in their briefs. Nothing in the pleadings of Lillian can be construed as alleging a claim based on estoppel or laches. Hilda's answer to the complaint alleges the facts showing her relationship to James and the transactions in regard to the property settlement and the insurance policy. Such answer, by itself and by reference to the complaint in interpleader, discloses the agreement to "deliver" the policy to Hilda, that it was not delivered, that Lillian was designated as primary beneficiary on December 20, 1932, by endorsement on the policy, that Hilda agreed to pay the premiums subsequent to 1931 and, inferentially, that she did not pay them, that the premiums were paid by someone, and that the policy remained in the hands of James or Lillian until James' death. It fails to allege with certainty whether Hilda

claims the rights of a contract beneficiary or those of an assignee; likewise it fails to allege any offer on her part to pay the premiums, any demand for possession of the policy or any excusing circumstances for permitting the policy to remain in the hands of James or Lillian, without action on her part, for the approximately eleven years which elapsed between the making of the settlement agreement and James' death.

Hilda contends that neither the doctrine of estoppel nor of laches can be operative as against her because of Lillian's failure to plead any such defense. It is true that the general rule is that one who relies upon estoppel or laches as a defense must plead facts constituting such estoppel or laches where, as here, there is an opportunity to do so (see *Lucci* v. *United Credit & Collection Co.* (1934), 220 Cal. 492, 497 [31 P.2d 369] ; *Victor Oil Co.* v. *Drumm* (1920), 184 Cal. 226, 243 [193 P. 243] ; *Mahana* v. *Echo Publishing Co.* (1919), 181 Cal. 233, 236 [183 P. 800] ; *Newhall* v. *Hatch* (1901), 134 Cal. 269, 273 [66 P. 266, 55 L.R.A. 673]), but, as recognized in the Victor Oil Company case, *supra,* such rule does not apply where the facts appear on the face of the adversary's pleading. It is also true that "Mere delay in commencing an equitable proceeding without a showing of inequitable conduct or prejudice suffered thereby is not sufficient to bar the action" (*Brownrigg* v. *DeFrees* (1925), 196 Cal. 534, 538 [238 P. 714]) and that the averments above epitomized do not contain any allegation that Lillian parted with value in reliance upon her designation as beneficiary or her possession of the policy. But it does appear that there has been a change in circumstances and in the value of the property. Lillian and James did enter into a contract of marriage (this is alleged in the answer of Lillian and admittedly was known to Hilda at least as early as 1937) and, whether such marriage was valid or invalid, did live together as husband and wife; Lillian was named in 1932 as the primary beneficiary of the policy; premiums for some ten or eleven years were paid on the policy, adding to its value; and James is now deceased and not available as a witness to testify to the circumstances surrounding the change of beneficiary and the payment of premiums. The court specifically found that Lillian directly paid a portion ($271.20) of those premiums. We think, therefore, that while Lillian chose by her pleadings to stand upon her legal claim as the named

beneficiary of the policy, this is a proper case in which to allow Hilda no more than the measure of her own performance of the contract upon which she bases her claim in equity. In other words, while Lillian has failed to plead and prove, and the findings do not establish, such equities in her favor as would deprive Hilda of all rights to the policy or its proceeds, Hilda, by her own case, has established an equitable right to recover only that which James agreed to deliver to her—the policy with premiums paid for the year 1931. The proportionate distribution of the proceeds effected by this conclusion saves to Lillian all that she has established any right to have either on her legal claim or on any equitable theory available to her.

From the findings and undisputed evidence it appears that the premiums on the policy in question were payable semiannually, on February 2 and August 2 of each year; that by the terms of the property settlement agreement between James and Hilda the latter agreed to pay the premiums falling due "subsequent to the year 1931"; that from the date of issue of the policy (February 2, 1921) through the year 1931, twenty-two semi-annual premiums had been paid, and thereafter and prior to James' death (on April 25, 1942) James and Lillian paid twenty-one additional semi-annual premiums; i. e., a total of forty-three premiums were paid on the policy during the life of James.

Therefore, in accordance with the views expressed above, the judgment is modified by striking out the provisions relating to a refund of premiums to Ruth Lillian Birkelund and to the payment of costs therefrom, and is further modified to provide that Hilda Olsen Birkelund shall recover 22/43 of the net proceeds of the policy and that Ruth Lillian Birkelund shall recover 21/43 of such proceeds, each claimant to recover from the other her legal costs, if any, in the trial court, such legal costs to be ascertained upon the entry of this modified judgment by proceedings as upon an original entry of judgment. As so modified, the judgment is affirmed, appellant to have her costs on appeal.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.