[Civ. No. 20096. Second Dist., Div. Three. Dec. 10, 1954.]

CALIFORNIA-WESTERN STATES LIFE INSURANCE COMPANY (a Corporation), Plaintiff, v. VALERIE RAE KESTER, a Minor, etc., Defendant and Respondent; NELLIE MAE KESTER, Defendant and Appellant.

Krag & Sweet, Donald R. Krag and David T. Sweet for Defendant and Appellant.

Mindlin & Levy and J. D. Gluecksman for Defendant and Respondent.

WOOD (Parker), J.—In this action for declaratory relief, it was alleged in the complaint that a controversy existed between plaintiff and defendants as to which of the defendants was the beneficiary under a certain certificate that was issued in connection with a group policy of insurance. Plaintiff deposited in court, for payment to the beneficiary as determined by the court, the amount of the proceeds then due under the certificate; and plaintiff asked that the court determine which defendant was the beneficiary. Judgment was in favor of defendant Valerie Rae Kester, the daughter of the insured. Defendant Nellie May Kester, the mother of the insured, appeals from the judgment.

L. Ray Kester, the insured, was an employee of C. O. Sparks, Inc., and Mundo Engineering Company (herein referred to as employer). He died on October 29, 1951.

Prior to January 4, 1951, Bankers Life Insurance Company issued its group policy of life insurance to the employer, covering the employees. In connection with the policy, that insurance company issued to L. Ray Kester its certificate which provided that the beneficiary was ''Nellie M. Kester, mother, if living, otherwise to Valerie R. Kester, daughter.''

On January 4, 1951, the plaintiff California-Western Life Insurance Company became the carrier of group insurance for the employer in place of Bankers Life. On said date, plaintiff California-Western issued its group policy of insurance to the employer; and in connection with the policy California-Western issued to L. Ray Kester its certificate which provided that the beneficiary was ''Valerie Kester, Daughter if living.''

Plaintiff California-Western, in preparing its certificates of insurance for the various employees, did not obtain new applications from the employees but did prepare the certificates from ''dummy'' applications which its employee, Mr. Biles, made from record cards of Bankers Life, which cards were in the office of the employer (Sparks-Mundo).

Mr. Biles, called as a witness by defendant Nellie Mae Kester, testified in part as follows: He is the supervisor of plaintiff's Los Angeles group office. In December, 1950, he went to the office of the employer and looked at record cards in that office and at that time prepared records or new cards for California-Western. One of the cards of Bankers Life which he saw in the employer's office showed the name of employee L. Ray Kester, and that card indicated: ''Beneficiary, Nellie Mae if living, otherwise Valerie, daughter.'' In filling out the new card of L. Ray Kester on the California-Western form, he inserted as beneficiary the name ''Nellie Mae Kester,'' and then next to the word ''relationship'' on the form he wrote the word ''wife.'' He did not talk to L. Rae Kester. On the same day that he made the new card and after he had had a discussion with the employer's representative who was handling the group insurance, he changed some of the words on the new card that he had made. He crossed out the name ''Nellie Mae'' (leaving the last name ''Kester'') and inserted the name ''Valerie,'' and changed the word ''wife'' to the word ''daughter.'' He did not have any written authorization from L. Ray Kester to so change the card. He made the change in the name of the beneficiary on the California-Western application on the basis of information furnished by an employee of Sparks-Mundo. **The**

application cards which he completed at the employer's office were sent to the home office of California-Western for issuance of the certificates.

The court found that the certificate issued by California-Western was delivered to Sparks-Mundo and was in turn delivered to L. Ray Kester; that on the date of death of L. Ray Kester the defendant Valerie Rae Kester was living; that the designation of the beneficiary, ''Valerie Rae Kester, daughter, if living,'' on said certificate issued by California-Western was not due to any mistake; that L. Ray Kester intended that his daughter Valerie Rae Kester be named as beneficiary.

The judgment was that Valerie Rae Kester is the beneficiary of the proceeds of the policy issued by California-Western; and she is entitled to receive said proceeds.

Appellant (Nellie Mae Kester) contends that the evidence was not sufficient to support the findings; that the finding that the designation of Valerie Rae Kester as beneficiary was not due to any mistake is not supported by any evidence; that the finding that L. Ray Kester intended that his daughter be named as beneficiary is not supported by any evidence; and that the judgment is contrary to law.

Mr. Wievers, the superintendent of Sparks-Mundo, called as a witness by Valerie, testified that as part of his duties he handled the certificates issued by California-Western. He first saw them in January, 1951, when they came over with the payroll checks, and at that time he handed a certificate of California-Western to Mr. Kester, and Mr. Kester took it and did not hand it back to him at any time. He (witness) had a discussion with Mr. Kester about beneficiaries in December, 1950, when Sparks-Mundo had decided to change the insurance to California-Western (about 10 days before the certificate was delivered). Mr. George was also present at the conversation. Mr. Kester said, in that conversation, that he did not want to give his former wife (Opal) any money. Mr. Wievers (witness) replied that Mr. Kester did not have to worry about that because she (former wife) would be guardian and would have to report to the court ''any money that's left to Valerie.'' Mr. Kester said, ''Well, in that case I think I'll change it.'' About 10 days later Mr. Kester told him that he was going to leave the proceeds of the policy to Valerie Rae Kester, his daughter.

Mr. George, the plant foreman who was called as a witness by Valerie, testified that ''around 1950'' or ''it might have

been 1951'' he saw Mr. Wievers hand an insurance certificate to Mr. Kester. At that time he (witness) received his certificate. He was present at a conversation between Mr. Wievers and Mr. Kester. About the time ''we got our Cal-Western policies,'' he (witness) understood Mr. Kester to say that he was going to change his policy to his daughter Valerie. On another occasion, not too long after the first conversation, Mr. Kester told him he was going to change his policy to his daughter Valerie. About two weeks thereafter Mr. Kester told him that he had changed his policy. On cross-examination he said that the conversations occurred after they received their policies.

Mr. Weller, called as a witness by Nellie, testified that he became the paymaster for Sparks-Mundo in February, 1951. He succeeded Mr. Reese as paymaster, and he used the desk that was formerly used by Mr. Reese. Mr. Reese left the company in August, 1951. In February, 1952 (about three months after the death of Mr. Kester), Mr. Weller (witness) found the California-Western policy of Mr. Kester in a drawer in his (witness') desk—in the back of the drawer with a lot of other papers.

The evidence was legally sufficient to support the findings.

■ The finding that the certificate was delivered to Mr. Kester is supported by the testimony of Mr. Wievers and Mr. George—Mr. Wievers said he delivered the certificate and Mr. George said that he saw Mr. Wievers deliver it.

■ In support of the findings that the designation of Valerie as beneficiary was not due to a mistake, and that Mr. Kester intended that Valerie should be the beneficiary, there was testimony as follows: that Mr. Biles inserted Valerie's name after he had had a discussion with the employer's representative who was handling the group insurance; that the certificate showing Valerie as the beneficiary was delivered to Mr. Kester about nine months before his death; that Mr. Kester told Mr. Wievers and Mr. George that he was going to change his policy to Valerie; and that he told Mr. George that he had changed the policy to Valerie. Even if a mistake had been made by Mr. Biles in preparing the dummy application, the court could have inferred that Mr. Kester observed that the certificate, as finally written and delivered to him, stated that Valerie was the beneficiary; and, in view of the fact that several months elapsed after the delivery of the certificate and prior to Mr. Kester's death, the court

could have inferred that Mr. Kester intended that Valerie should be the beneficiary.

As to the appellant's contention that the judgment is contrary to law, appellant argues that there was no evidence that Mr. Kester complied with the requirement of the California-Western policy regarding a change of beneficiary. The policy provided in part as follows: "An Employee insured under the Group Life Policy may designate a beneficiary, or change his designation of beneficiary thereunder by written request filed at the Home Office of the Company. Such designation or change shall take effect only upon receipt of such written request at the Home Office of the Company and after the Company has endorsed the Employee's certificate of insurance with the change, and not before, and thereupon all rights of the former beneficiary shall cease." The new certificate as written and delivered to Mr. Kester stated that Valerie was the beneficiary. It does not appear that Mr. Kester contemplated any change of beneficiary as stated in that certificate. The question here is whether Mr. Kester intended that the new policy should name the same beneficiary as named in the Bankers Life policy, that is, his mother Nellie, or whether the new policy should name his daughter Valerie as beneficiary. The question was one of fact for the trial court. It does not appear that Nellie Mae Kester had a vested right by reason of a contract with the insured or otherwise to be beneficiary in the Bankers Life policy or in a policy that superseded the Bankers Life policy. In *Phoenix Mutual L. Ins. Co.* v. *Birkelund*, 29 Cal.2d 352 [175 P.2d 5], it was said at page 360: "An ordinary beneficiary of a life policy has merely an expectancy of an incomplete and inchoate gift which is revocable at the will of the insured [Citation.] while a contract beneficiary has a vested right *in the proceeds of the policy.*" It cannot be said the judgment is contrary to law.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

The petition of defendant and appellant for a hearing by the Supreme Court was denied February 2, 1955.