Sandra Joanne MURPHY, Plaintiff-Third Party Defendant-Appellant-Cross Appellee,

v.

The TRAVELERS INSURANCE COMPANY, Defendant-Third Party Plaintiff-Appellee-Cross Appellant,

v.

Barbara A. MURPHY, Individually and as parent and natural guardian of minors Lee S. Murphy, et al., etc., Third Party Defendants-Appellees.

No. 74–3986.

United States Court of Appeals, Fifth Circuit.

July 12, 1976.

Philip A. Masquelette, Houston, Tex., for appellant.

Michael G. Terry, Houston, Tex., for Travelers Ins. Co.

Sidney L. Farr, Houston, Tex., for Barbara A. Murphy, etc., et al.

Before GODBOLD and RONEY, Circuit Judges, and FREEMAN, District Judge.

RICHARD C. FREEMAN, District Judge:

This interpleader action concerns the competing claims of the widow and the former wife and children of Donald Lee Murphy to the proceeds of a group life insurance policy. At the time of his death, Donald's life was insured for $48,000.00 under a group life insurance policy issued by Travelers Insurance Co. (hereinafter "Travelers") covering the employees of Texaco, Inc. Following a nonjury trial, the district court entered judgment awarding $8,000.00 to Michael Murphy, Donald's son, and $16,000.00 to Donald's former wife, Barbara Murphy, as guardian ad litem for Lee and John, Donald's other children (hereinafter appellees). Sandra Murphy, Donald's second wife, had already been paid $3,000.00 by Travelers, because she was the designated beneficiary under the policy; and on entry of judgment, she was allowed to withdraw the remaining $21,000.00 from the registry of the court. The trial court ordered Travelers to pay interest on the proceeds of the policy to the claimants and also taxed costs against Travelers. The trial court refused to assess a statutory penalty and award attorneys' fees in the action.

Sandra has appealed from this judgment, arguing that the court lacked subject matter jurisdiction over the interpleader action, that the court erred in awarding $24,000.00 to appellees, and that the court erred in failing to enter judgment against Travelers for attorney's fees and statutory damages. Travelers has filed a cross appeal contesting the award of interest and costs. Before proceeding to the merits of these issues, some further review of the salient facts is warranted.

As noted above, the dispute in issue concerns competing claims to the proceeds of a group life insurance policy covering the employees of Texaco, Inc. Donald became an insured under the policy in 1958, shortly after he commenced working for Texaco as a geophysicist. At that time, he designated Barbara as his beneficiary under the policy. Donald and Barbara had been married in 1951 and had three children, Michael, born July 10, 1952; Lee, born September 27, 1959; and John, born July 4, 1962. Barbara, Michael, John, and Lee are residents of California. On May 23, 1968, Barbara and Donald signed a property settlement agreement providing for the division of property, the payment of alimony to Barbara, and the payment of child support. In addition, the agreement made reference to two insurance policies, one designated as "the family insurance policy presently in effect," and the other designated as a "group life insurance policy." The parties do not dispute the fact that the second policy is the policy in issue in this case. The relevant portions of the property settlement relating to this policy provide as follows: "Husband further agrees to make the minor children of the parties irrevocable beneficiaries of up to one-half of his pension plan and group life insurance policy, for a period of twenty (20) years." This property settlement agreement, including the terms relating to the group life insurance policy, was incorporated into an interlocutory judgment of divorce, dated September 20, 1968 and entered by the Superior Court of Orange County, California. A final judgment of divorce was approved by that court on January 20, 1970.

Donald did not comply with the provisions of the divorce decree and property settlement agreement concerning the designation of his children as beneficiaries; but instead, following his marriage to Sandra, named her as the sole beneficiary of the policy proceeds. The change of beneficiary form naming Sandra as beneficiary was dated July 27, 1971. Donald died on December 14, 1972, while the insurance policy was in full force and effect. As noted above, Travelers paid Sandra a $3,000.00 advance on the policy that same day. Texaco, Inc. was informed of the appellees' adverse claim to the policy proceeds by a telephone call on December 19, 1972, by a telegram dated December 22, 1972, and by a subsequent letter from Barbara and an attorney, which was forwarded to Travelers on January 5, 1973. Sandra submitted a demand letter to Travelers claiming the entire proceeds of the policy on January 16, 1973, and commenced the instant action on January 18, 1973.[1] Travelers, pursuant to an extension, filed its answer on February 12, 1973. In the interim, on February 9, 1973, Travelers had received a demand from Barbara for one-half the policy proceeds. Thereafter, Travelers attempted to file a third party action for interpleader, paying $24,000.00, the amount claimed by appellees, into the registry of the court. Although this interpleader claim was procedurally deficient and was not allowed filed, plaintiff Sandra had already prepared a motion objecting to interpleader on the ground that the entire $45,000.00 in dispute had not been tendered to the court. A properly prepared motion for leave to file the interpleader claim was filed on April 5, 1973, and granted by the court on May 29, 1973. The $45,000.00 in proceeds was deposited with the court on June 12, 1973, and, pursuant to court order, transferred to an interest bearing savings account on Feb-

---

1. In her complaint, Sandra sought to recover from Travelers $45,000.00 in proceeds remaining unpaid, as well as interest and court costs. Plaintiff subsequently amended her complaint to add claims for statutory damages and attorney's fees.

ruary 8, 1974. Before turning to the substantive and procedural issues presented by this appeal, it is appropriate to consider the question of the trial court's jurisdiction over the interpleader claim.

## INTERPLEADER JURISDICTION

■ In contesting the district court's jurisdiction to entertain Travelers' interpleader claim, appellant argues that the claim is deficient because the entire amount in dispute was not deposited into the registry of the court. Appellant contends that merely depositing the face amount of the policy proceeds is not enough where the claimant also seeks recovery of attorney's fees and statutory damages. We do not agree. Although the deposit requirement is a jurisdictional prerequisite to suit under the interpleader statute, 28 U.S.C. § 1335, payment of the face amount of the policy proceeds into the court has long been held to be sufficient. E. g., Ross v. International Life Insurance Co., 24 F.2d 345 (6th Cir. 1928). Thus, "[t]he preferred practice is to require only that the stakeholder deposit all of the disputed property he has in his possession, even though it might be less than is claimed by one or more of the defendants." C. Wright & A. Miller, Federal Practice and Procedure § 1716 at 459 (1972). This "preferred" practice is the rule in this Circuit. Austin v. Texas-Ohio Gas Co., 218 F.2d 739, 744–45 (5th Cir. 1955). The language of 28 U.S.C. § 1335(a) refers to "money or property" in the "custody or possession" of the party seeking interpleader. The plain language of the statute clearly refers to tangible property interests or interests evidenced by a "note, bond, certificate, policy of insurance" or other similar intangible document of definite, ascertainable value. An inchoate, uncertain claim for attorney's fees or chose in action asserted against the general assets of a party rather than specific, identifiable "property" is not a proper subject for interpleader relief.[2] Adopting appellant's reasoning would not only compel reversal of this case, it would unduly broaden federal interpleader jurisdiction to include virtually any contingent or inchoate claim which might ultimately be the subject of litigation. See Wallach v. Cannon, supra.

■ Finally, although the interpleader claim in the instant suit was predicated on 28 U.S.C. § 1335, it appears that interpleader is also permissible under Rule 22, Fed.R. Civ.P. Rule 22 interpleader does not require a "deposit"; and it is clear that the requisite diversity of citizenship and jurisdictional amount is present in the instant suit. Moreover, although it may have been impossible to perfect service over appellees, residents of California, in the Texas court, it appears that they voluntarily appeared in the action, thereby waiving any potential defects founded on service or venue problems. See C. Wright & A. Miller, supra §§ 1711 & 1712. As a result, further consideration of appellant's jurisdictional argument is not warranted.[3]

2. Federal interpleader jurisdiction depends on identifiable property or a limited fund or pecuniary obligation, and it is not proper to predicate jurisdiction on the mere potential to recover damages for pecuniary injury. Wallach v. Cannon, 357 F.2d 557 (8th Cir. 1966). Failure to deposit the full amount claimed does not deprive the court of interpleader jurisdiction where the stakeholder deposits all of the specific property or the full amount of the specific "fund" into the court. See, e. g., Austin v. Texas-Ohio Gas Co., supra; United States v. Sentinel Fire Insurance Co., 178 F.2d 217 (5th Cir. 1949). Although there is some case authority in other jurisdictions supporting appellant's position, e. g., New York Life Insurance Co. v. Lee, 232 F.2d 811 (9th Cir. 1956), that authority may more properly be interpreted as concerned mainly with the question of whether or not interest and attorney's fees may be recovered from a stakeholder at all, rather than as recognizing an inflexible rule that the stakeholder must anticipate such a potential recovery on the initial filing of the interpleader claim. Cf. Phillips Petroleum Co. v. Adams, 513 F.2d 355, 369 (5th Cir. 1975). Requiring a stakeholder to anticipate such a recovery ab initio would frustrate the purpose of federal interpleader, and it would be particularly improper for this court to reverse on this ground where, as discussed below, we have determined that the trial court's denial of statutory damages and attorney's fees was proper.

3. Given the propriety of interpleader under 28 U.S.C. § 1335 and appellees' waiver of possible venue and service defects, it is not necessary

## THE MERITS

█ The merits of the instant appeal present the following substantive issues for resolution:

(1) Under California law, does an agreement incorporated in a California divorce decree to name a child or children as "irrevocable" beneficiaries of an insurance policy vest an equitable (or legal) interest in the children which cannot be divested by a subsequent change in beneficiary by the named insured?

(2) Is the property settlement in issue here, in providing for payment of "up to one-half" of the policy proceeds, too vague and indefinite to be enforced, or is this potential deficiency a matter which may be cured by parol evidence?

Before turning to these specific questions, it is necessary to resolve the question of whether the law of Texas or the law of California should govern in this case. In their briefs, the parties differ on this point; however, at oral argument, appellant conceded that California law should govern the interpretation and effect of the California divorce decree and property settlement agreement. Nevertheless, appellant contends that the question for the court concerns the payment of proceeds under a life insurance policy, arguing that this question should be governed by Texas insurance and contract law. The authority on this point is not uniform, *see Couch on Insurance* 2d § 16:28, but it appears that the majority rule determines the sufficiency of a legal or equitable transfer or assignment of rights in an insurance policy by the law of the place where the transfer was made. *E. g., New England Mutual Life Insurance Co. v. Spence*, 104 F.2d 665 (2d Cir. 1939) (applying conflicts rule of the forum and substantive law of Texas). In any event, controlling Texas case authority compels the application of California law in this case. *See Manhattan Life Insurance Co. v. Cohen*, 139 S.W. 51 (Tex.Civ.App.1911).

The issue in this case concerns the effect of the terms and conditions of the 1970 California divorce decree, and this issue must be determined by reference to California law. As a result, appellant's reliance on Texas statutes and case authority is misplaced; however, even if Texas law were applicable, appellant's arguments would be rejected. Basically, apart from the indefiniteness arguments discussed below, appellant relies on the following general proposition applicable in considering entitlement to insurance proceeds following divorce:

> [T]he decree in a divorce or a property settlement included therein [may restrict] the divorced insured husband in the exercise of the right which he would otherwise possess to change the beneficiary. In this connection, a distinction must be made between a judicial decree which merely imposes a personal duty on the insured to refrain from changing the beneficiary, so that he is guilty of contempt if he makes a change, and a decree which destroys the right of the insured to make any change, so that if he attempts to do so the change is a nullity.

*Couch on Insurance* 2d § 28:41 at 121. Appellant contends that the California divorce decree, if it required Donald Murphy to do anything, merely required him to take some act in the future, arguing that the remedy of the children, if any, in such circumstances is to seek relief from Donald's estate. Although the language in *Couch* tends to support this argument, that language, or appellant's interpretation thereof, is somewhat overbroad. On review of the relevant cases, it appears that the result often turns on fine distinctions relating to substantive state insurance law, or subjective intent, rather than on the question of whether the agreement to change beneficiaries was fully executed or merely executory. *Compare Cadore v. Cadore*, 67 So.2d 635 (Fla.1953) (no valid gift of policy where insured retained possession of it with right remaining in him to designate his second wife as beneficiary) *with Mutual Life Insurance Co. of*

---

for the court to determine whether the interpleader claim in the instant action might also

be sufficient under ancillary venue concepts. *See* C. Wright & A. Miller, *supra* § 1712.

*New York v. Franck*, 9 Cal.App.2d 528, 50 P.2d 480 (1935). *See also Jacoby v. Jacoby*, 69 S.D. 432, 11 N.W.2d 135 (1943) (where insured fails to perform obligation to change beneficiary, the promisee gains nothing but a cause of action for breach of contract). On the other hand, the California and arguably the majority rule, as stated by the *Franck* court, is much more protective of the rights of former wives and their children:

> [W]hile a named beneficiary of a policy which provides for a change thereof by the insured, secures only a contingent interest therein, a subsequent agreement of the insured in consideration of a settlement of property rights in contemplation of a divorce by the terms of which he covenants to make her sole, irrevocable beneficiary of the policy, vests her with an equitable interest therein which may not be defeated without her consent.

50 P.2d at 483. With some minor variations,[4] this rule has been consistently applied by the California courts.[5] *See, e. g., Wright v. Wright*, 276 Cal.App.2d 56, 80 Cal.Rptr. 741 (1969); *Cramer v. Biddison*, 257 Cal.App.2d 720, 65 Cal.Rptr. 624 (1968); *Franklin Life Insurance Co. v. Kitchens*, 249 Cal.App.2d 623, 57 Cal.Rptr. 652 (1967); *Waxman v. Citizens National Trust and Savings Bank*, 123 Cal.App.2d 145, 266 P.2d 48 (1954); *Chilwell v. Chilwell*, 40 Cal. App.2d 550, 105 P.2d 122 (1940); *Mutual Life INsurance Co. v. Henes*, 8 Cal.App.2d 306, 47 P.2d 513 (1935).

■ The more recent California cases have generally involved claims against the insured's estate, rather than against the policy proceeds, *e. g., Waxman v. Citizens National Trust and Savings Bank*, *supra*; and the recent authority also contains some criticism of the vested equitable interest rule, which depends generally on the determination of the "stronger and better equities in each case", *Franklin Life Insurance Co. v. Kitchens*, 57 Cal.Rptr. at 659. Nevertheless, cases such as *Franck, Chilwell*, and *Henes, supra*, have never been overruled. *See also Schlemmer v. Provident Life & Accident Insurance Co.*, 349 F.2d 682 (9th Cir. 1965). Absent a compelling reason to depart from these California precedents, this court is bound to follow the preexisting California law. *E. g., Hood v. Dun & Bradstreet, Inc.*, 486 F.2d 25, 31 (5th Cir. 1973), *cert. denied*, 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882 (1974). Under these prece-

---

4. The only arguably "major" variation on the vested equitable interest rule occurs when the second wife or other designated beneficiary has given adequate consideration for the change of beneficiary. *Greenberg v. Greenberg*, 264 Cal. App.2d 896, 71 Cal.Rptr. 38 (1968). In *Greenberg*, the insured had agreed to make his first wife the irrevocable beneficiary of "about $36,-000.00 worth of life insurance" if she did not remarry. This agreement was incorporated in a 1945 divorce decree. The insured remarried in 1945, and thereafter his second wife contributed the majority of the family income. The second wife likewise paid all premiums on the policies and interest on a loan against the cash value of the policies from 1957 until the date of the insured's death. As a result, although the court ruled that the first wife had a vested equitable interest in the policies, the court determined that the second wife became a bona fide purchaser of the policies without notice of the first wife's claims and as a result had acquired good *legal title* to the policy proceeds. The court noted that the first wife had a "perfectly valid claim" which must be asserted against the insured's estate. Although this case remains good law, it has never been followed and may arguably be explained as anoth-

er indication of the California courts' willingness to "balance the equities" in such cases. *See Phoenix Mutual Life Insurance Co. v. Birkelund*, 29 Cal.2d 352, 175 P.2d 5 (1946). Appellant herein has not shown that she should be deemed to be a bona fide purchaser in this case or that the equities favor her claim over the claim of Donald's children. *See* 175 P.2d at 11.

5. At one time it is clear that the Texas courts would not have followed the result in *Franck*; for under former Texas law, a decree of divorce terminated the insurable interest of the divorced wife in the life of her husband. *E. g., New England Mutual Life Insurance Co. v. Spence*, *supra*; *Metropolitan Life Insurance Co. v. Richardson*, 27 F.Supp. 791, 795 (W.D.La. 1939), *app. dismissed*, 109 F.2d 339 (5th Cir. 1940). This rule, however, was subject to many exceptions, *e. g., Womack v. Womack*, 141 Tex. 299, 172 S.W.2d 307 (1943), and has now been overruled by legislative fiat. *See* Article 3.49-1 of the Texas Insurance Code. This legislative action, and more recent judicial action, *e. g., Partin v. deCordova*, 464 S.W.2d 956 (Tex.Civ.App.1971) reveal a greater willingness to protect the interests of divorced women in the State of Texas.

dents, the property settlement agreement in issue here created a vested equitable interest in Donald's children which was not defeated by the subsequent formal change of beneficiary naming his second wife.

■■■■ Consistent with the recognition of equitable interests in putative contract beneficiaries of insurance policies, the California courts have been particularly liberal in allowing extrinsic evidence to show the parties' intent on entering a contractual relationship.[6] Although appellant argues that language in the property settlement providing that Donald make his children beneficiaries of "up to one-half" of his group life policy is fatally uncertain, the trial court found that Donald had intended to make the children beneficiaries of exactly one-half of the proceeds. This finding was apparently predicated in part on the testimony of Barbara concerning a meeting with the divorce lawyer. Barbara stated that Donald expressed a desire to make the children beneficiaries of one-half his insurance policy should he remarry. Although appellant contends that the court erred in admitting such testimony, we do not agree. See, e. g., Kemp v. Metropolitan Life Insurance Co., 205 F.2d 857 (5th Cir. 1953) (extra-

judicial statements of insured to wife admissible to solve ambiguity in his alleged gift of insurance policy). Moreover, the trial court's finding and the choice of 50% of the proceeds as the amount of the transfer is consistent with the community property laws of both Texas and California. E. g., id. See, e. g., Davis v. Prudential Insurance Co., 331 F.2d 346 (5th Cir. 1964) (recognizing widow's 50% community property interest in insurance proceeds). Accord, Dixon Lumber Co. v. Peacock, 217 Cal. 415, 19 P.2d 233 (1933). Absent any countervailing evidence whatsoever the findings of the trial court on this issue may not be disturbed as clearly erroneous.[7]

■■■ Even if controlling California law did not support the result below, recent developments in the law of Texas would compel affirmance of the lower court. See Box v. Southern Farm Bureau Life Insurance Co., 526 S.W.2d 787 (Tex.Civ.App. 1975). The Box case, like the instant action, involved competing claims to the proceeds of a life insurance policy. The insured was divorced in 1964, and as part of the property settlement, the insured agreed to keep his life insurance in full force and effect and name his children as beneficiar-

---

**6.** In California, as in most states, the courts do not favor the destruction of contracts on the ground of uncertainty. See e. g., Haggerty v. Warner, 115 Cal.App.2d 468, 252 P.2d 373 (1953). Principles of contract "indefiniteness" or "uncertainty" are often discussed in terms of bilateral or unilateral contracts, offer and acceptance, and mutuality or a "meeting of the minds." As noted by Professor Corbin, "[a]ll agreements have some degree of indefiniteness and some degree of uncertainty. . . .; [but] [t]he court . . . must not be pedantic or meticulous in interpretation of [contract] expressions." A. Corbin, Corbin on Contracts § 95 at 396 (1963). It is one thing to enforce an agreement wholly without substance or an "agreement to agree", where it is clear that the parties have left the substance of the agreement for future negotiation, id. at 397; see Willowood Condominium Association, Inc. v. HNC Realty Co., 531 F.2d 1249, (5th Cir. 1976) (applying Texas law), and it is another matter entirely to frustrate the parties' clear intent to enter an agreement where it is possible to reach an equitable result. A. Corbin, supra at 400. In such circumstances, it is clear that the California courts would allow parol proof to aid

in the interpretation of the contract terms in an effort to avoid getting lost in "the fog of 'mutuality.' " A. Corbin, supra § 98 at 442 (discussing California Lettuce Growers v. Union Sugar Co., 45 Cal.2d 474, 289 P.2d 785 (1955)). See Pacific Gas & Electric Co. v. Thomas Drayage and Rigging, 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641 (1968).

**7.** The trial judge's findings are somewhat inconsistent with his consideration of parol testimony; for in findings of fact numbers 22 and 23 the court ruled that the contract provision in issue was plain and ambiguous. The interpretation of unambiguous contracts is generally a question of law which is not insulated from appellate review by the clearly erroneous rule, and this court might be inclined to disagree as a matter of law with the finding that the words "up to one-half" are plain and unambiguous. Nevertheless, parol, extrinsic evidence was admitted in this case, and this evidence, in light of the circumstances, supports the trial court's conclusion that the property settlement and divorce decree created a vested equitable interest in the children to the extent of exactly one-half of the policy proceeds.

ies. On remarriage, however, the insured designated his second wife as beneficiary; and when he died, the designated beneficiary claimed the policy proceeds. The court rejected the second wife's claim and ruled that "the property settlement agreement gave appellees [the children] a vested equitable interest in the proceeds of the insurance policy. . . . [which] could not be divested without the consent of [the former wife]." *Id.* at 789 (citing *Shoudy v. Shoudy*, 55 Cal.App. 344, 203 P. 433 (1921). It thus appears that the Texas courts have fully adopted the vested equitable interest rule long applied by the California courts. As a result, under the law of California and of Texas,

> Where the insured reserves the right to change the beneficiary in the policy, the beneficiary therein obtains no vested interest in the proceeds of the policy prior to the death of the insured. The insured may change the beneficiary at will and thereby divest a prior beneficiary of all interest in the proceeds of the policy. [citations omitted]. This rule, however, does not prevail where the insured, for a valuable consideration, agrees to designate a certain beneficiary and not to change that beneficiary . . . with whom he (the insured) has contracted.

*Id.* Under this rule, it is clear that the district court did not err in awarding one-half of the police proceeds to appellees.

## STATUTORY DAMAGES AND ATTORNEY'S FEES

Although the face amount of the policy on Donald's death was $48,000.00, there is no indication that appellees ever claimed more than one-half of these proceeds, or

$25,000.00. As noted above, Travelers paid Sandra, as the designated beneficiary, $3,000.00 from the proceeds of the policy immediately on the death of the insured. Given that appellees only claimed $24,000.00 of the proceeds, Sandra argues that Travelers was dilatory and exhibited bad faith in failing to pay her the "undisputed" $21,000.00 balance of the proceeds remaining after deducting the $3,000.00 "advance" payment. As a result, Sandra contends that the trial court erred in failing to award her statutory damages and attorney's fees under Article 3.62 of the Texas Insurance Code.

Sandra's contentions in this regard are somewhat curious, in light of her argument concerning interpleader jurisdiction.[8] In any event, as noted above, procedurally at least it appeared that Travelers had intended to pay Sandra the "undisputed" $21,000.00 balance; for Travelers' initial efforts to file its interpleader claim related solely to the $24,000.00 portion of the proceeds claimed by appellees. Texaco was informed of Barbara's claim as early as December 19, 1972, less than one week after Donald's death, and Travelers was informed of the claim shortly thereafter. Travelers received a formal demand for payment of $24,000.00 of the policy proceeds to appellees on February 9, 1972. In the interim, however, Travelers had been served with a complaint by Sandra seeking recovery of the entire $45,000.00 balance of the policy proceeds. When travelers filed its procedurally deficient effort for interpleader, Sandra resisted the interpleader claim on the ground that the entire $45,000.00 rather than merely the $24,000.00 sought to be

**8.** As already discussed, appellant argues that the trial court did not have jurisdiction over the interpleader claim because the full amount in controversy was not deposited into the registry of the court. In this section of her brief, however, appellant apparently contends that she is entitled to statutory damages and attorney's fees because Travelers deposited $21,000.00 more than the actual "amount in controversy." Obviously, $21,000.00 would be more than sufficient to satisfy a potential claim for attorney's fees and statutory damages in this action, *see*

note 2 *supra*; however, Travelers wisely refrains from arguing that this amount was indeed deposited to satisfy such claims. Pleading alternative theories of recovery is certainly appropriate; however, appellant's "cake and eat it too" tactics in the instant case are questionable at best. In any event, it is clear that appellant's contentions concerning the statutory damages issue, as well as the jurisdictional issue, are wholly without merit, whether they be considered inconsistent or merely alternative theories.

interpleaded was in dispute. Although the evidence concerning the reasons for Sandra's contention concerning the "dispute" over the $21,000.00 in proceeds not claimed by appellees is unclear, in light of the conflicting testimony and the confusing procedural history of the action, we do not believe that the district court erred as a matter of fact or law in failing to assess statutory damages and attorney's fees in this action. *See, e. g., McFarland v. Franklin Life Insurance Co.,* 416 S.W.2d 378 (Tex. 1967); *Gabler v. Minnesota Mutual Life Insurance Co.,* 498 S.W.2d 413 (Tex.Civ.App. 1973); *Lee Memorial Hospital v. Elgin-Butler Brick Co.,* 436 S.W.2d 354 (Tex.Civ.App. 1969).

## THE CROSS APPEAL

At the conclusion of the trial, the district judge announced his verdict from the bench, concluding that appellees should be awarded $24,000.00 and appellant $21,000.00, and that both claimants should receive prejudgment interest on these sums from the date of Donald's death, to the date of the judgment, September 4, 1974. The sum of $4,717.50 covering the award of prejudgment interest was deposited with the court by Travelers on September 4, 1974. Findings of fact and conclusions of law were filed on September 30, 1974, and judgment was entered on that day awarding the claimants their respective shares of the policy proceeds together with earned interest and prejudgment interest. At that time, the court ruled that costs should be adjudged against Travelers and in favor of the claimants. Thereafter, Sandra filed a bill of costs seeking to recover from Travelers $1,763.09 in costs and Barbara filed a bill of costs seeking to recover $615.83 from Travelers in costs. These bills of costs were filed and costs were taxed by the clerk on October 10, 1974, and October 11, 1974, respectively. Travelers subsequently filed a "motion for determination as to taxable costs" contesting the amount sought; however, there is no indication in the record that the motion was ruled upon by the trial

court. Travelers has filed a cross appeal contesting the judgment for costs and contesting the award of prejudgment interest after June 12, 1973, the date of deposit of the $45,000.00 in insurance proceeds with the court. Travelers does not dispute the award of interest from the date of Donald's death to June 12, 1973.

As pointed out by Travelers, the trial court's judgment awarding interest and costs is somewhat inconsistent with the ruling that Travelers did not act in bad faith and was not dilatory in seeking interpleader in this action. In fact, as a general rule, when an interpleader action is successful, the court often awards costs, as well as attorney's fees, to the stakeholder. *See* C. Wright & A. Miller, *supra* § 1719. Of course, this court agrees that the decision to award such costs is generally an equitable matter entrusted to the sound discretion of the trial court, *id.* at 481–82; however, it does not follow that the court may likewise utilize its equitable discretion to tax costs *against* a stakeholder, particularly where the stakeholder has not been found to be dilatory or otherwise guilty of bad faith. Assuming arguendo that it might sometimes be appropriate to award costs to the claimants and against the stakeholder, such an award should be limited to those cases where the trial judge concludes, by way of specific factual findings, that the stakeholder's conduct with respect to the interpleader action was improvident, vexatious, or otherwise improper, if not in bad faith. *Cf. Alyeska Pipeline Service Co. v. The Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Brisacher v. Tracy-Collins Trust Co.,* 277 F.2d 519 (10th Cir. 1960); *John Hancock Mutual Life Insurance Co. v. Beardslee,* 216 F.2d 457 (7th Cir. 1954), *cert. denied,* 348 U.S. 964, 75 S.Ct. 523, 99 L.Ed. 751 (1955).

The award of prejudgment interest is likewise improper. As noted by Travelers, under Texas law, an insurance company is liable for interest on unpaid policy proceeds until its debt is discharged,

but following the deposit of the funds into the registry of the court, they become the property of whichever claimant establishes his right thereto. *See Sellers v. Harris County,* 483 S.W.2d 242, 243 (Tex.1972). In interpleader cases in Texas, the general rule concerning accrual of interest may be stated as follows:

> Once a stakeholder makes an unconditional offer to give up possession of a disputed fund, it ceases to exert that dominion over the money sufficient to justify an obligation to pay interest thereon, and the rule is that once such an unconditional tender is made, any liability for interest ceases as of the date of tender.

*Phillips Petroleum Co. v. Adams, supra* at 370. Payment of the proceeds into the registry of the court or an offer to do so is a sufficient "unconditional tender" to terminate the claimant's right to interest following the tender. *Id.; Shell Oil Co. v. Jones,* 191 F.Supp. 585, 590 (S.D.Tex.1960). As a result, it is clear that Travelers may not be held liable for interest beyond June 11, 1973.

In sum, we AFFIRM the ruling of the district court awarding $24,000.00 of the policy proceeds in the registry of the court toappellees and $21,000.00 to appellant. The judgment below imposing court costs upon Travelers and entering judgment against Travelers for interest following deposit of the proceeds in the registry of the court is REVERSED and the action REMANDED for further proceedings consistent with this opinion.